Akeeb Dami Animashaun, NY Bar No. 5552849 (*pro hac vice* forthcoming)
14 Wall Street, Suite 1603
New York, NY 10005
929.266.3971
animashaun@pm.me

Lucy Brierly Bansal, DC Bar No. MD06639 (*pro hac vice* forthcoming)
Craig L. Briskin, DC Bar No. 980841 (*pro hac vice* forthcoming)
JUSTICE CATALYST LAW
123 William St., 16th Floor
New York, NY 10038
202.525.7516
lbansal@justicecatalyst.org
cbriskin@justicecatalyst.org

Rachel Lederman, SBN 130192
ALEXSIS C. BEACH & RACHEL LEDERMAN, ATTORNEYS
P.O. Box 40339
San Francisco, CA 94140-0339
415.282.9300
rachel@sfbla.com

*Counsel for Plaintiff Dylan Camarlinghi*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSÉ DIVISION

| | |
|---|---|
| DYLAN CAMARLINGHI, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SANTA CLARA COUNTY; DOES 1–25,<br><br>Defendants. | No. 5:21-cv-03020<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

# INTRODUCTION

1.    Defendant Santa Clara County has a policy of incarcerating people for several days after the Santa Clara County District Attorney's Office ("DA") declines prosecution, which ends the legal basis for incarceration. The DA's declination decision is immediately available to the County. The County therefore could and should immediately release a person after prosecution is declined. But the County does not. In the case of Plaintiff Dylan Camarlinghi, the County detained him for over two days after the DA declined to prosecute him. The County detains others for as many as six days after the DA declines prosecution.

2.    Santa Clara County's failure to release individuals it has no legal basis to detain constitutes a gross violation of individuals' due process rights. Freedom from physical detention by one's government "is the most elemental of liberty interests."[1] As such, it is a fundamental and indisputable principle of law that if the government has no basis to detain an individual – or the basis for detention has ended – the individual must be promptly released from custody.[2] Santa Clara County, however, routinely ignores and violates this basic principle of due process.

3.    Santa Clara County's violations are systemic. It has failed to implement the most basic procedures to ensure that individuals are promptly released from jail after the DA declines prosecution. Despite the fact that it maintains electronic systems that make immediate release both feasible and possible, the County, without any legal basis, detains people who have no pending criminal charges until the night of their prescheduled first

---

[1] *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action").

[2] *Berry v. Baca*, 379 F.3d 764, 773 (9th Cir. 2004) ("plaintiffs possessed a constitutional right to freedom from imprisonment [within] a reasonable time after they were judicially determined to be innocent of the charges against them"); *Brass v. Cty. of Los Angeles*, 328 F.3d 1192, 1200 (9th Cir. 2003) (recognizing that the plaintiff "may have had a due process right to be released within a reasonable time after the reason for his detention ended").

appearance date, which might be as many as six days after the DA declines prosecution. The County's failure to put in place policies and procedures to ensure prompt release constitutes deliberate indifference under civil rights law.

4.      Mr. Camarlinghi brings this civil rights action pursuant to 42 U.S.C. § 1983 to redress violations of his and class members' rights under the Fourteenth Amendment to the United States Constitution. He seeks monetary damages on behalf of himself and a proposed class.

## **PARTIES**

5.      Plaintiff Dylan Camarlinghi has lived in Santa Clara County all of his life, including during all of the operative events in this Complaint. He currently resides in San José. As a result of Defendant's policies, practices, and/or customs, Mr. Camarlinghi was subjected to over two days of unlawful incarceration after the DA declined to prosecute him and the legal justification for his detention ended.

6.      Defendant Santa Clara County, California is a political subdivision organized under the laws of the State of California. Defendant Santa Clara County can be sued in its own name, pursuant to Cal. Gov. Code § 945. Santa Clara County operates the Sheriff's Office and employs all of its personnel. Laurie Smith, the elected Sheriff of Santa Clara County, is the final policymaker for Santa Clara County with respect to policies, practices, and/or customs complained of herein. **Ex. 1**, Declaration of Laurie Smith ("Smith Decl.") ¶ 1. Sheriff Smith has failed to implement policies and procedural safeguards that ensure that people are released from the Jail within a reasonable time after the DA declines prosecution. The County's policy, practice, and/or custom of waiting to release individuals who have no pending criminal charges until their prescheduled first appearance date is inadequate and unreasonable. It forces individuals to languish at the Jail for several days after their charges have been dropped. The need for different procedures is so obvious that the County's failure to promulgate and implement them

constitutes deliberate indifference to Mr. Camarlinghi's and proposed class members' constitutional rights.

7.     The DOE Defendants include other individuals who supervised and/or participated in the conduct complained of herein. Plaintiff is informed and believes and therefore alleges that each of the DOE Defendants is legally responsible and liable for the incident, injuries, and damages hereinafter set forth, and that each of said defendants proximately caused said incidents, injuries and damages by reason of their negligence, breach of duty, negligent supervision, management or control, violation of constitutional and legal rights, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission. Plaintiff reserves the right to amend this complaint to insert further charging allegations when such facts are ascertained.

8.     In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, employee and/or in concert with each of said other Defendants.

## JURISDICTION

9.     This is a civil rights action arising under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

10.     Venue is proper under 28 U.S.C. § 1391. The Defendant is a political subdivision located in this District. The events giving rise to the claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

11.     Pursuant to Local Rule 3-2(e), this action is properly assigned to the San José division of this Court.

## STATEMENT OF FACTS

### Santa Clara County's Unlawful Policies, Practices, and/or Customs

12.     In Santa Clara County, all persons arrested within the County limits – by any arresting agency in the County, including but not limited to the police departments of San José, Santa Clara, Palo Alto, Stanford, Mountain View, and the Santa Clara County Sheriff's Department – are taken to the Jail for booking. *See* **Ex. 1** (Smith Decl.) ¶ 18.

13.     Two Sheriff's Office departments oversee the booking process: "Intake Booking" and "Administrative Booking." Id. ¶ 15.

14.     The arresting agency initially brings the arrested person to Intake Booking, which is located in the basement of the "Main Jail." Id.

15.     An employee in Intake Booking enters the arrested person's information into an electronic database called the Criminal Justice Information Control ("CJIC") and sets the initial condition(s) of release, including, but not limited to, a secured final condition of release. Id. ¶¶ 5, 18, 27.

16.     During the booking process, the arresting officer takes the probable cause affidavit to the Office of Pretrial Services and a criminal magistrate judge who, among other things, makes a probable cause determination. Id. ¶ 26.

17.     After the intake booking process is completed, each arrested person is referred to Administrative Booking, where their condition of release is processed or they are cleared for release from the Jail. Id. ¶ 30.

18.     Administrative Booking also determines when each arrested person will appear for their first court appearance. Id. ¶ 33.

19.     Administrative Booking follows this policy, practice, and/or custom despite the fact that California Penal Code § 825 requires arrested persons to be arraigned at their first court appearance without unnecessary delay: "The defendant must in all cases be taken before the magistrate without unnecessary delay, and in any event, within 48 hours after his arrest excluding Sundays and holidays."

20.     A document titled "825 PC ARRAIGNMENT SCHEDULE" (**Fig. 1**, below) hangs in Administrative Booking cubicles. It outlines, based on the day and time of arrest, when an arrested person will be scheduled for their first court appearance or "825 Arraignment Date." Administrative Booking automatically schedules each arrested person's first appearance on the latest statutorily permissible day.

21.     The arraignment – or first appearance – schedule in **Fig. 1** shows that if a person is arrested on a Thursday evening, the Sheriff will automatically schedule her first appearance to take place on the following Tuesday, five days after she is arrested. If the Monday following the person's Thursday arrest is a holiday, the Sheriff will automatically schedule her first appearance to take place the following Wednesday, six days after arrest.

**Fig. 1**

| 825 PC ARRAIGNMENT SCHEDULE | | | |
|---|---|---|---|
| Day of Arrest | Time of Arrest | Arraignment Day | Arraignment Day (Monday Holiday) |
| Monday | 0001 - 1700 | Wednesday | Thursday |
| Monday | 1701 - 2359 | Thursday | Thursday |
| Tuesday | 0001 - 1700 | Thursday | Thursday |
| Tuesday | 1701 - 2359 | Friday | Friday |
| Wednesday | 0001 - 2359 | Friday | Friday |
| Thursday | 0001 - 1700 | Monday | Tuesday |
| Thursday | 1701 - 2359 | Tuesday | Wednesday |
| Friday | 0001 - 1700 | Tuesday | Wednesday |
| Friday | 1701 - 2359 | Wednesday | Thursday |
| Saturday | 0001 - 2400 | Wednesday | Thursday |
| Sunday | 0001 - 2400 | Wednesday | Thursday |

22.     As a matter of policy, practice, and/or custom, the Sheriff's Office does not depart from the 825 PC ARRAIGNMENT SCHEDULE in **Fig. 1**.

23.     If the arrested person does not post bail or meet other conditions of pre-trial release, she is either incarcerated at the Main Jail, Elmwood Jail, or Correction Center for Women, facilities within the Jail system. **Ex. 1** (Smith Decl.) ¶¶ 49, 50.

24.     Once an arrested person's initial appearance has been scheduled and booking is complete, the arresting agency creates a packet for each arrested person consisting of a probable cause affidavit, police report, and complaint, and forwards the packet to the DA.

25.     After reviewing the arrest packet, the DA determines whether to prosecute the arrested person.

26.     The DA typically makes a prosecution determination within hours of receipt of the arrest packet.

27.     If the DA declines prosecution, the DA enters this information into CJIC and lists the reason or reasons why it declined prosecution.

28.     The Sheriff has access to and is immediately able to see the DA's prosecution declination on CJIC.

29.     The DA's prosecution declination also becomes part of the arrested person's physical file, to which the Sheriff has access.

30.     The Sheriff and County, themselves, acknowledge that an arrested person should be released from custody after the DA declines prosecution: "Decline to Prosecute" means that "[t]he prosecutor declines to file formal charges & the defendant is released from custody with no further proceedings." *See* **Ex. 2**, The Pretrial Justice Phase of the Criminal Process for Santa Clara County (Appendix B to Bail Release Work Group Report), at 6.

31.     As a matter of policy, practice, and/or custom, however, the Sheriff does not immediately release arrested persons from custody after the DA declines prosecution.

32.     Even after the DA declines to prosecute the charges for which the Sheriff is detaining a person, and no holds or warrants justify the continued incarceration of the

person, the Sheriff continues to detain the person, without reason, until the evening of their pre-scheduled first appearance date.

33.    For example, if a person is arrested on Thursday evening and the DA declines prosecution on Friday morning, the Sheriff continues to detain the person until Tuesday, their prescheduled first appearance date, even if no holds or warrants justify the person's continued detention. *See* **Fig. 1**, 825 PC ARRAIGNMENT SCHEDULE, *supra* page 6.

34.    The reason for this prolonged pretrial detention with no pending charges to be prosecuted is simple: The Sheriff's process for releasing individuals who are not charged systemically disregards their rights and keeps them in detention far longer than they should be.

35.    Despite the fact that the DA's prosecution determination is immediately available to the Sheriff, the Sheriff does not bother to check CJIC to determine whether the DA has declined prosecution against an arrested person until the evening before the arrested person's first appearance, which can be as long as six days.

36.    Every evening, a Sheriff's employee creates a list that includes all arrested persons who need to be transported to court the following day. This transport list includes all in-custody persons whose pre-scheduled first appearance date has not yet passed.

37.    All persons appearing on the transport list who have been charged and whose first appearance is scheduled for the following day are kept on the transport list and appear in court the following day.

38.    One of two things happens to incarcerated persons whose first appearance date has not yet passed and for whom the DA has declined prosecution:

a.    If the person's initial appearance **is the following day**, the Sheriff checks to see whether the DA declined prosecution. If the DA declined prosecution, the Sheriff removes the person from the transport list and schedules them for release

the following day. The person is released the following day without having appeared before a judicial officer.

b.      If the person's initial appearance **is not the following day**, the Sheriff removes the person from the transport list and keeps her in custody. The Sheriff either does not check to see whether the DA declined prosecution or ignores the declination decision. Such persons therefore remain in custody despite the Sheriff having access to information showing that the basis for the person's detention has ended.

39.     Because the Sheriff either does not check to see whether a prosecution determination has been made or ignores the prosecution determination until the night before an arrested person's initial appearance date, arrested persons are routinely incarcerated by the Sheriff for days after the DA declines prosecution and the legal justification for their confinement ends.

40.     The Sheriff's widespread and systemic overdetention of people in its custody results in serious harm. Even a single additional night in jail can severely disrupt a person's life and has lasting destabilizing and traumatic effects: "The consequences of prolonged detention may be more serious than the interference occasioned by arrest [because] [p]retrial confinement may imperil the [person's] job, interrupt his source of income, and impair his family relationships." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975).

## Plaintiff Dylan Camarlinghi's Arrest and Unlawful Detention

41.      Mr. Camarlinghi was arrested on Sunday, February 9, 2020, at around 11:00 P.M., after an alleged altercation in his home with a friend.

42.     At the time of the arrest, Mr. Camarlinghi had no prior criminal record.

43.     Mr. Camarlinghi was transported by the arresting agency to the Main Jail.

44.     He was booked into the Jail by an employee of the Sheriff's Office.

45.     Because Mr. Camarlinghi was arrested and booked into the Jail on a Sunday and the following Wednesday was a court holiday, his initial appearance was scheduled

to take place on Thursday, February 13, 2020. See **Fig. 1**, 825 PC ARRAIGNMENT SCHEDULE, *supra* page 6.

46.     After being booked into custody at the Main Jail, he was handcuffed to a bench for six hours while he waited to be transported to Elmwood.

47.     During the six hours Mr. Camarlinghi was handcuffed to a bench, he was not offered and did not receive food or water.

48.     Upon being transferred to Elmwood, Mr. Camarlinghi was strip-searched and given a two-inch thick foam mat for sleeping, as well as bedding and a jail uniform.

49.     Mr. Camarlinghi was then taken to a 40-person, 5-bathroom barrack, where he was incarcerated for the duration of his detention.

50.     On the morning of Tuesday, February 11, 2020, the DA declined to prosecute Mr. Camarlinghi.

51.     The DA entered the prosecution determination in CJIC.

52.     The DA's prosecution determination was immediately available to the Sheriff.

53.     The Sheriff, however, failed to release Mr. Camarlinghi after the prosecution declination was made.

54.     Rather, the Sheriff waited until two days later – Thursday, February 13, 2020, Mr. Camarlinghi's pre-scheduled first appearance date – to begin processing Mr. Camarlinghi's release.

55.     Mr. Camarlinghi was released from the Jail at around midnight on Thursday, February 14, 2020, over 60 hours after the DA declined prosecution.

1

**CLASS ACTION ALLEGATIONS**

2   56.   Plaintiff brings this action on behalf of all persons whom Santa Clara

3   County failed to release on the day the DA declined prosecution in their case and who did

4   not have any warrants or criminal holds[3] pending at the time it declined prosecution.

5   57.   A class action is a superior means, and the only practicable means, by which

6   Plaintiff and unknown Class Members can challenge Defendant's unlawful detention

7   policy, practice, and/or custom.

8   58.   This action is brought and may properly be maintained as a class action

9   pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

10   59.   This action satisfies the numerosity, commonality, typicality, adequacy,

11   predominance, and superiority requirements of those provisions.

12   **Numerosity. Fed R. Civ. P. 23(a)(1)**

13   60.   The individuals in the class are so numerous that joinder of all members

14   would be impracticable.

15   61.   Over 48,000 individuals are booked into and confined at the Jail annually.

16   Most of those people are referred to the DA for prosecution (people booked into the Jail

17   on, inter alia, out-of-county warrants or probation violations, are not). The DA has

18   reported that it declines to prosecute about 20 percent of cases it is referred.[4] In 2014, for

19   example, the DA declined to prosecute over 6,000 charges. **Ex. 2**, at 7.

20   62.   Thus, thousands of individuals are therefore subject to the Sheriff's

21   unconstitutional policies, practices, and/or customs each year.

22

_____

23   [3] A criminal hold is a written demand from another jurisdiction to the Santa Clara County Sheriff

24   asking that it keep an individual in jail until the other jurisdiction can take the individual into
custody.

25   [4] _See_ Jeff Rosen, _Race and Prosecutions 2013–2015: A Report of the Santa Clara County District

26   Attorney's       Office_,       at      6–7      (Oct.      26,      2016),
https://www.sccgov.org/sites/da/newsroom/newsreleases/Documents/Race%20and%20Prosecut

27   ions%20Report_1.pdf.

28

63.     Because joinder of thousands of plaintiffs would be impracticable, the proposed class satisfies the numerosity requirement.

**Commonality. Fed. R. Civ. P. 23(a)(2)**

64.     Plaintiff seeks relief that is common to the class, and common questions of law and fact exist as to the class. Plaintiff seeks relief concerning whether Defendant's policies, practices, and/or customs violate Class Members' rights.

65.     Common legal and factual questions arise from one central scheme: Defendant's policy, practice, and/or custom of detaining arrested persons for several days after the DA declines prosecution. Defendant has for years uniformly applied this policy to thousands of arrested persons.

66.     Resolution of common legal and factual issues will determine whether all of the Class Members are entitled to the relief that they seek. Among them are:

a.     Whether Defendant maintained a policy, practice, and/or custom of detaining, for several days, persons whom the DA declined to prosecute;

b.     Whether it violates the United Sates Constitution to detain people for days on charges that the prosecutor has declined to prosecute.

**Typicality. Fed. R. Civ. P. 23(a)(3)**

67.     Plaintiff's claim is typical of the claims of the other Class Members. Each Class Member was arrested and detained at the Jail by the Sheriff. The DA subsequently declined to prosecute each Class Member. Defendant failed to release each Class Member within a reasonable time after the DA declined prosecution.

68.     Answering whether Defendants maintain an unlawful policy, practice, and/or custom of detaining arrested persons for an unreasonable period of time after the DA declined prosecution will determine the claims of Plaintiff and every Class Member.

69.     A ruling that Defendant's policy, practice and/or custom violated Plaintiff's constitutional rights will benefit every other Class Member.

1

## Adequacy. Fed. R. Civ. P. 23(a)(4)

2     70.     Plaintiff is an adequate representative of the Class because his interest in the

3    vindication of the legal claim that he raises is entirely aligned with the interest of the other

4    Class Members, each of whom has the same constitutional claim. Plaintiff is a member of

5    the Class, and there are no known conflicts of interest among the members of the Class,

6    all of whom have an interest in vindicating their constitutional rights.

7     71.     Plaintiff is represented by undersigned counsel, all of whom have

8    experience litigating complex civil rights matters and class actions in federal court and

9    have extensive knowledge of the details of Defendant's scheme and relevant constitutional

10   law.

11    72.     Counsel have devoted significant time and resources to becoming intimately

12   familiar with the challenged scheme and with the relevant federal laws and procedures

13   that can and should govern it. The interests of the Class Members will be fairly and

14   adequately protected by Plaintiff and his attorneys.

15   ## Predominance and Superiority. Fed. R. Civ. P. Rule 23(b)(3)

16    73.     Class treatment under Rule 23(b)(3) is appropriate because common

17   questions of law and fact predominate over individual ones and a class action is the only

18   practicable way – and, therefore, the superior way – of resolving this case.

19    74.     This case turns, for every Class Member, on whether Defendant's policies,

20   practices, and/or customs are lawful.

21    75.     The common questions of law and fact listed above are dispositive questions

22   in the case of every Class Member, and will predominate over any individual questions.

23    76.     The question of liability can therefore be determined on a class-wide basis.

24   Class-wide treatment of liability, rather than individual suits by thousands of Class

25   Members, is a far superior method of determining the content and legality of Defendant's

26   scheme.  Plaintiff knows of no special difficulty to be encountered in the maintenance of

27   this action that would preclude its maintenance as a class action.

28

77.     The question of damages will be driven by class-wide determinations of common questions. To the extent that individual damages will vary, they will vary depending in large part on the amount of time an individual was overdetained.

78.     Determining damages for individual Class Members can be handled in a ministerial fashion based on Defendant's official, electronic records, which will show the length of unlawful overdetention.

## CLAIMS FOR RELIEF

### Claim I
### Substantive Due Process
### Fourteenth Amendment to the U.S. Constitution
### 42 U.S.C. § 1983

79.     Plaintiff realleges and incorporates herein by reference the preceding and any subsequent paragraphs of this Complaint, including all Figures and Exhibits.

80.     Defendant, acting under color of law, has enacted and enforced a policy, practice, and/or custom of incarcerating people for as many as six days after their criminal charges have been dismissed and the legal justification for their incarceration ends.

81.     Defendant's policy, practice, and/or custom of continuing to detain individuals after the lawful reason for detention has ended constitutes deliberate indifference and violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

82.     As a direct and proximate cause of Defendant's unlawful policy, practice, and/or custom, Plaintiff Dylan Camarlinghi and a class of similarly situated individuals whom he seeks to represent suffered violations of their constitutional rights and are entitled to monetary damages for their injuries.

**Claim II**
**Procedural Due Process**
**Fourteenth Amendment to the U.S. Constitution**
**42 U.S.C. § 1983**

83.     Plaintiff realleges and incorporates herein by reference the preceding and any subsequent paragraphs of this Complaint, including all Figures and Exhibits.

84.     Defendant, acting under color of law, has failed to provide adequate procedural protections to ensure that peoples' most elemental liberty interest – freedom from physical detention – is not violated, and they are not detained after their charges are dropped and the legal justification for their incarceration ends.

85.     The need for adequate safeguards to ensure that Defendant does not continue to incarcerate people who have no pending charges – and whom the DA declined to prosecute – is so obvious that the failure to promulgate and implement them constitutes deliberate indifference and violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

86.     As a direct and proximate cause of Defendant's unlawful policy, practice, and/or custom, Plaintiff Dylan Camarlinghi and similarly situated individuals, whom he seeks to represent, suffered violations of their constitutional rights and are entitled to monetary damages for their injuries.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Dylan Camarlinghi, on behalf of himself and the proposed class, demands a jury trial for all issues so appropriate and requests that this Court order the following relief:

A.     Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff Dylan Camarlinghi as representative for the Class, and appointing his counsel as counsel for the Class;

B.     A judgment compensating the Plaintiff and the proposed Class for the damages that they suffered as a result of Defendant's unconstitutional and unlawful conduct in an amount to be determined at trial;

C.      For punitive damages against the individual defendants and/or each of them, for the named individual plaintiffs, to be determined according to proof;

D.      For pre- and post-judgment interest as permitted by law;

E.      An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 18 U.S.C. § 1964; and

F.      Such other and further relief as this Court deems just and proper.

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

**JURY DEMAND**

Plaintiff demands a trial by jury in this action.

DATED this 26th day of April 2021.          Respectfully submitted,

AKEEB DAMI ANIMASHAUN

JUSTICE CATALYST LAW

ALEXSIS C. BEACH & RACHEL LEDERMAN ATTORNEYS

*/s/ Rachel Lederman*

*Counsel for Plaintiff*
*Dylan Camarlinghi*