# EX.1

JAMES R. WILLIAMS, County Counsel (S.B. #271253)
ARYN PAIGE HARRIS, Deputy County Counsel (S.B. #208590)
TARA LUNDSTROM, Deputy County Counsel (S.B. #247636)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile:  (408) 292-7240

Attorneys for Respondent
LAURIE SMITH

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

| | |
|---|---|
| MARGARITO REYES,<br><br>    Petitioner,<br><br>v.<br><br>LAURIE SMITH,<br><br>    Respondent. | No. 20CV366846<br><br>*Exempt from Filing Fees Pursuant to Gov. Code § 6103*<br><br>**DECLARATION OF RESPONDENT LAURIE SMITH IN SUPPORT OF OPPOSITION TO PETITIONER MARGARITO REYES'S VERIFIED PETITION FOR WRIT OF MANDATE**<br><br>Date:    July 9, 2020<br>Judge:  Honorable Peter Kirwan |

I, Laurie Smith, declare as follows:

1. I am the duly elected Sheriff for Santa Clara County. I was first elected Sheriff in 1998. I have been re-elected five times and I am currently serving my sixth term as Sheriff. I began my law enforcement career with the Santa Clara County Sheriff's Office in 1973, working as a Deputy Sheriff Matron (the former title for a female Sheriff's Deputy) at the Santa Clara County Jail until 1976. Between 1976 and 1990, I worked in many positions in the Sheriff's Office, including as a detective, on patrol, and in all jail facilities. I was promoted to Assistant Sheriff in 1990, which is the position I held until I was elected as Sheriff in 1998. I oversee all Sheriff's staff, including those staff responsible for the booking and release process.

2. I have personal knowledge and experience of all the matters and facts stated in this declaration, based on my discussions with staff and review of the relevant records, and if called as a

1
Declaration of Laurie Smith ISO Opposition to Petitioner Reyes's
Verified Petition for Writ of Mandate
20CV366846

witness, I could and would testify competently to them.

**STAFF ARE DISPLACED BECAUSE OF CONSTRUCTION EFFORTS**

3.   Beginning January of 2019, the Sheriff's Office began preparing for the razing of the old jail to construct the new jail. As part of construction efforts, Administrative Booking staff were moved offsite to temporary buildings about a block away from the Main Jail. Although space is limited in Main Jail, we have one work station we allocate to Administrative Booking staff and, beginning the week of June 22, 2020, two staff members will be assigned to work in Main Jail in "Lower Booking" (so named because it is located in the basement) to streamline the booking process and expedite releases when possible.

**SHERIFF'S OFFICE DOES NOT HAVE JAIL MANAGEMENT SOFTWARE**

4.   The Sheriff's Office is currently in the process of procuring and implementing a multi-year, multimillion-dollar Jail Management Software System to streamline and automate the daily management of the jail, inmate information, and the booking and release processes. The County of Santa Clara is also in the middle of a multiyear, multi-million-dollar project to enhance and update the County's criminal justice systems, to improve information sharing between justice partners and automate workflows. At present, most of the paperwork utilized in the booking and release process is paper based, including the individual booking files (known as "jackets") associated with each booking, and driven from one facility to another.

5.   Each booking results in a record in the local criminal justice mainframe, known as the Criminal Justice Information Control ("CJIC"), in order to share basic demographic and offense/charge related data with other justice partners involved in the lifecycle of the criminal justice process, including the Court and the District Attorney's Office. However, CJIC is not a jail management system and does not track the individual history of each booking as a jail management system would, nor does it automate updates from the Court. For example, if the Court orders a change to bail or other terms of the booking/confinement, the order is sent via a paper order through the Office of Pretrial Services or on a "snap-out" from Court Clerk to the Sheriff's Office. Admin Booking staff then pull the paper booking file and manually reconcile this information, update the booking file and CJIC and other databases, and process any actions resulting from the Court order.

1  This process is time intensive and very manual.

2  6. The Sheriff's Office also has statutory requirements related to reporting the booking
3  and release of individuals to the California Department of Justice ("DOJ"), some of which are
4  automated through the LiveScan (fingerprints) during the booking process; however, due to the age
5  and complexities of CJIC, staff have to make additional manual system checks and inquires using
6  state criminal justice databases, including the California Law Enforcement Telecommunications
7  System ("CLETS") and other criminal justice information databases, in order to complete the
8  process.

**EARLY AND AGGRESSIVE MANAGEMENT OF COVID-19**

7. Beginning in February, the Sheriff's Office was one of the first correctional systems to seek a reduction in the jail population to manage COVID-19.  The Sheriff's Office has worked closely with Adult Custody Health Services (the medical/mental health provider) and the Public Health Department.  Since that time, the jail has implemented a variety of measures to prevent and control the spread of COVID-19 in jail, which include limiting third-party access to the jails; masking policies; developing remote technology for court appearances; distributing masks to all arrestees and staff; increasing use and access to sanitation supplies; and adopting numerous operational changes to support social distancing, including systemwide social distancing markers.

8. The Sheriff's Office developed a COVID-19 Investigation Unit, staffed with deputies and professional staff who have been conducting contact tracing for the jail system long before contact tracing was being utilized in the community.

9. On April 10, 2020, I invited the Public Health Officer to tour the jail facilities and observe the COVID-19 prevention efforts.  The Public Health Officer drafted a public report mostly praising the existing measures by the Sheriff's Office to prevent and control the spread of COVID-19 and making a few recommendations, which I implemented.  [See report https://www.sccgov.org/sites/sheriff/COVID19/Documents/Jail%20Flyers/Public%20Health%20Visit%20to%20County%20Jails%2004102020_FINAL.pdf]

10. At present, every arrestee that is housed in the facility is tested for COVID-19 on Day 1 and again on Day 12.  All newly booked arrestees are isolated for a minimum of 14 days from the

3

existing jail population using one of the Risk Management Units ("RMU"). The logistical and staff time devoted to these efforts is significant.

11. All arrestees are provided with a mask and asked to wear the mask in the booking area. The Sheriff's Office encourages but does not force the arrestee to wear the mask.

12. Since March 2020, the County's jail population has been reduced by more than one-third—a reduction of more than 1,000 inmates.

13. While some jails and prisons have had COVID-19 spread to a large percentage of the population, our jails have been able to keep COVID-19 figures at a manageable level. The Sheriff's Office continues to work closely with the Public Health Officer and other sources to implement best practices.

**BOOKING, BAIL, AND RELEASE PROCESS APPLIED TO $0 BAIL**

14. The Sheriff's Office has an established booking, bail, and release process. This same process, with a few recent modifications, is utilized for $0 bail arrestees.

15. The booking process in the Main Jail begins in Lower Booking. For an individual eligible for release on bail or otherwise, they are also processed by Administrative Booking. If Administrative Booking staff confirm that release is appropriate, Administrative Booking send the release message to Main Jail and the staff at the Main Jail process the release. As more fully detailed below, part of the booking and release process requires coordination between staff at the Main Jail in Lower Booking and staff assigned to Administrative Booking at an off-site location.

16. When the Judicial Council passed Emergency Rule 4 ("ER-4"), the Sheriff's Office was tasked with releasing arrestees who were in custody on $0 bail offenses and who were now eligible for release. The District Attorney's Office and defense counsel together successfully petitioned the court for the release of approximately 65 inmates in custody. As part of the release process, Administrative Booking staff researched upcoming court dates and open cases, completed a warrant check, and searched for other matters that could prohibit the individual's release. Through the work of Administrative Booking staff, the Sheriff's Office discovered numerous individuals who were not in fact eligible for release for reasons including other pending matters and holds that made them ineligible for release. One had died several weeks before. Ultimately, 32 inmates were

4

eligible and released as part of the order. Administrative Booking staff are specially trained in the various criminal justice databases and are aware of the full custody status of each individual. They frequently find warrants and other holds that are missed by other criminal justice partners.

17. Between mid-March and the present, the Sheriff's Office has processed over 7,000 releases. The primary responsibility for the administrative tasks associated with processing these releases falls on Administrative Booking to accomplish. They work with arcane criminal justice databases, and I have seen firsthand how their knowledge of these databases results in critical criminal justice information being found and addressed. Their efforts are the final safeguard to ensure that only individuals who should be released, are released.

## THE LOWER BOOKING PROCESS

18. **Arrest**: When an arrestee is arrested for a crime, the arresting agency (e.g., San Jose Police Department, Palo Alto Police Department) transports the arrestee to the Santa Clara County Main Jail to begin the booking process. In addition to arrests for specific on-view crimes, the arresting officer may have other legal court orders, such as arrest warrants, bench warrants, violations of parole or probation warrants, out of county/state warrants, or other circumstances requiring booking. In some instances, the arresting officer may determine that the individual has committed a crime and also meets the requirements in Welfare and Institutional Code section 5150 for a 72-hour mental health evaluation and hold. If the arresting offense requires booking, the arresting agency may book the individual for the criminal offense and place the hold.

19. **COVID-19 Screening**: The arresting officer and arrestee enter the facility and undergo a COVID-19 screening, which includes taking the arrestee's temperature, by Adult Custody Health Services nursing staff. Depending on how many arrestees are waiting to be booked, the arrestee may have to wait to be screened. Most arrestee are provided with a mask by the arresting agency but, if not, the arrestee will be provided with mask by the jail nurse.

20. **Security**: The arrestees will next move through a metal detector. If the arresting officer articulates specific reasonable suspicion that the arrestee is hiding contraband, the arresting officer will request that our staff conduct a strip search of the arrestee. In this event, our staff must be summoned to conduct the search. The search will be conducted only upon approval by the Lower

Booking Sergeant. The arresting officer collects the arrestee's property and places it in a plastic bag.

21. **Pre-Booking**: The arrestee will be placed in a holding cell in the intake area while the arresting officer completes the Affidavit Re Probable Cause and Bail Setting ("Affidavit of Probable Cause") and Pre-Booking Information Sheet.

22. **Medical Screening**: If the arrestee is cooperative, not combative, and not too intoxicated, the arrestee will next move to a station in the intake area to see a nurse. The nurse registers the arrestee in the HealthLink, which is a medical record case management system utilized by the County's Health and Hospital System. The nurse conducts a screening evaluation (questions, ADA screening, medication, suicidality, weight, blood pressure, etc.) that can vary in length depending on the overall complexity of the health of the arrestee, the need to seek out language services, and the arrestee's ability to complete the process, including his or her cooperativeness and level of intoxication. The nurse may have to engage in minor first aide depending on the arrestee's condition (e.g., wound care).

23. **Mental Health Evaluations** for **Some Arrestees**: If the arrestee responds to questions during booking that indicate that the arrestee has a history of mental illness or is currently expressing suicidal or homicidal ideation, the arrestee will be referred for an evaluation by a mental health professional. Mental Health staff are available 24/7 but may be addressing other crises in the jail and their response times to the booking area can vary depending on the demand for services. Once an arrestee has been flagged for a mental health evaluation, however, the arrestee cannot be released from custody until they are interviewed by a mental health professional because the mental health provider may determine that the arrestee needs to be placed on a 72-hour evaluation hold pursuant to Welfare and Institutions Code section 5150 and transported to Emergency Psychiatric Services. The jail staff work concurrently with the mental health referral and will continue to process the arrestee, but the mental health evaluation has to be completed before the individual can be released or housed.

24. **Identification**: The arresting officer brings the Pre-Booking Information Sheet to the Identification Deputy. The Identification Deputy is responsible for fingerprinting the arrestee, assigning the arrestee a booking number, and taking a photograph of the arrestee. Fingerprints are

run through the Automated Fingerprint Identification System ("AFIS"). There can be a lag time in receiving identification results from the State of California, including the State Identification Number (commonly known as the CII number), which is required to complete the booking process. This process is usually straightforward unless the arrestee has provided false identification or has no identification, in which case the person's true identification has to be reconciled. This might require the Identification Deputy to re-fingerprint an arrestee on a separate special fingerprint identification machine and contact AFIS to determine the arrestee's identity. In the event the arrestee is uncooperative, highly intoxicated, or too combative to complete the fingerprint process, the booking process may be delayed. After the booking photograph is taken, the Identification Deputy may conduct a pat down search to ensure the arrestee does not have weapons or contraband.

25. **Booking Deputy Engagement with Arrestee and Arresting Officer**: The booking officer completes the following tasks:

   a. *Pre-Booking Information Sheet*: The Booking Deputy will review and complete the Pre-Booking Information Sheet.

   b. *Set Bail*: The Booking Deputy will review the charges and the bail schedule to determine the arrestee's initial bail. This includes reviewing if the charges are eligible for $0 bail utilizing the Emergency Bail Schedule. This process can be complicated and is new for staff. The Booking Deputy must review the offenses and Emergency Bail Schedule and evaluate the specific sub-section and circumstances of the arrest to determine the appropriate bail, which is not always straightforward under the Emergency Bail Schedule. The arresting officer may request that the magistrate set higher bail pursuant to Penal Code section 1269c if the arresting officer has reason to believe the bail amount is insufficient.

   c. *PREA*: The Booking Deputy advises the arrestee of their rights under the Prison Rape Elimination Act ("PREA").

   d. *Property*: The Booking Deputy inventories the arrestee's property collected by the arresting officer, including cash. The Booking Deputy logs the arrestee's property on the Pre-Booking Information Sheet, and the arrestee signs in acknowledgement. An arrestee

cannot retain their property while in the booking area because of concerns over safety and security. For instance, the jail would not want to let a potentially suicidal arrestee in a holding cell keep their belt. Further, the jail cannot allow arrestees to have their phones, pocketknives, keys, money, etc. in the booking area. Such items constitute a safety risk for other arrestees, deputies and would compromise the security of the facility.

  e. *Protective Custody*: The Booking Deputy briefly screens the arrestee for suicidality and protective custody concerns to avoid holding the arrestee in a holding cell with another arrestee that might pose a risk to one another.

  f. *Food*: The arrestee is provided with food and water and—again—offered a mask. It is at this point that the arrestee is officially booked into custody and that time is noted on the Affidavit of Probable Cause—although the time of booking will not be entered into CJIC until later and the Booking Deputy still has additional tasks to complete related to the booking process.

26. **Magistrate review**: While the Booking and Identification Deputies are fingerprinting the arrestee and processing the booking, the arresting officer takes the Affidavit of Probable Cause to the Office of Pretrial Services staff who are present in the jail. In the event that the arresting officer requests that a magistrate set higher bail under Penal Code section 1269c, the arresting officer will state the reason for the request on the Affidavit of Probable Cause. Pretrial Services staff then begin looking at the individual's suitability for release on Own Recognizance ("OR") or the Supervised Own Recognizance Program ("SORP"), and will contact a magistrate for review of the case. The magistrate may review for probable cause, set higher bail, order the arrestee released on OR or SORP, and/or order conditions on bail or release. Our staff will abide by any court orders issued before staff finish processing the release. A magistrate is usually available between 7:00 a.m. and 11:00 p.m. While Pretrial Services staff is conducting this review, our staff continue with the booking and potential release process. Our staff is not involved in this magistrate review process and does not have any insight into it; however, it does run concurrent with the booking and release process. Our staff does not wait for the magistrate to review, unless the arresting officer has requested a higher bail amount under Penal Code section 1269c. If the arresting officer requests

8

magistrate review under Penal Code section 1269c, our staff finish the booking but will hold the arrestee until the magistrate review is completed or 8 hours have elapsed, whichever is earliest. After the magistrate has reviewed or 8 hours have elapsed, our staff will continue the release process, provided the arrestee remains eligible for release.

27. **Booking Deputy CJIC Entry**:  The Booking Deputy adds information about the arrestee from the Pre-Booking Information Sheet into CJIC.  This information then merges with the fingerprinting booking information and identification to form the electronic booking record that is forwarded to the California DOJ.  The Booking Deputy reviews CJIC for outstanding warrants or out-of-county charges that might change the arrestee's eligibility for $0 bail.

**ARRESTEE REFERRED TO ADMINISTRATIVE BOOKING FOR PROCESSING**

28. **Identification Deputy Makes Jackets for Classification and Administrative Booking**:  The paperwork from the completed booking process is returned to the Identification Deputy who collects the information from the booking process, the arrestee's fingerprints, and photographs and creates one file for the Classification Bureau—which is responsible for classifying and housing arrestees into the appropriate housing unit based on their level of risk to others and their victim potential—and creates another jacket for Administrative Booking.

29. **Classification Process**:  The Identification Deputy creates a classification file consistent with the established process and, in the event that the arrestee is held over on a warrant, hold, or the magistrate sets higher bail, it is ready for staff to prepare to house the arrestee into the jail.  On June 8, 2020, Assistant Sheriff Timothy Davis, who oversees the Custody Bureau, directed staff that arrestees who are selected for $0 bail should remain in the booking area until they are released on $0 bail for up to 12 hours prior to being housed.  Accordingly, our staff in the booking area keep $0 bail arrestees in the booking area until the individual is ready for release.

**ADMINISTRATIVE BOOKING PROCESS**

30. Administrative Booking must process the individual and clear the arrestee for release. This process is overseen by over 30 staff members.  Administrative Booking staff work from 4:30 a.m. to 1:30 a.m. seven days a week.  They are currently off-site due to construction and space constraints in the booking area.  While one person is assigned to process bails and another to process

releases, other Administrative Booking staff duties include reviewing and filing up to 500 court papers each day, managing the Sheriff's Work Program ("SWP") files and attendees, processing prison sentences and transportation, clearing individuals to attend jail programs, answering 9 different phone lines and constant updates to inmate files to ensure attendance of all required court hearings and timely and accurate releases when one is eligible for release.

31. **Administrative Booking Jacket Pick Up**: Because the Sheriff's Office is still running on a paper booking system, Administrative Booking staff must travel to the Main Jail approximately every two hours to pick up completed booking jackets. Administrative Booking staff return to the offsite location and begin processing the arrestee for release or housing.

32. An Administrative Booking staff member will first prioritize all $0 bail releases and then do the following:

- Verify that all of the charges are correct and, in the case of $0 bail, that the charges are eligible for $0 bail;

- Check for typographical errors in the name, description, date of birth, etc. This prevents CJIC and other databases from having conflicting or inaccurate information about the arrestee.

- Check CJIC and CLETS databases for warrants. CLETS has statewide and federal information and may result in the discovery of additional warrants that were missed by the arresting agency or the Booking Deputy.

- Check all of the arrestee's Also Known As ("AKA") for outstanding warrants. Depending on the number of AKAs this can be time consuming.

- Conduct a check of the California Sex and Arson Registry ("CSAR"), a database maintained by the California DOJ, to inquire if the individual is a registered sex offender. If so, Administrative Booking staff will later notify the California DOJ that the arrestee was in custody by sending them the required notification signed by the arrestee.

- Run a CJIC check for upcoming court cases and print and review the dockets. Open dockets with upcoming court dates are reviewed for possible outstanding warrants

10
Declaration of Laurie Smith ISO Opposition to Petitioner Reyes's
Verified Petition for Writ of Mandate
20CV366846

that were missed or under a different name or if the arrestee was previously remanded and we did not receive a court paper. These are cause to conduct further research and could result in the arrestee being held.

It is not uncommon that Administrative Booking staff have to research information that is discovered during the search for warrants and upcoming court dates in order to reconcile the information so as to determine if the person can be released. Staff may have to call arresting agencies and other criminal justice partners to confirm warrants that are found or to place holds. Staff often find warrants or holds at this stage that prevent or delay an arrestee's release.

33. **Determine Court Date**: Administrative Booking staff will determine an appropriate court date for the arrestee's first court appearance.

34. **Bail Receipt and Information about Court Date**: Administrative Booking staff will create a bail receipt for each $0 bail charge for the arrestee to sign. The bail receipt also has the information about the arrestee's court date.

35. **Second Review**: A second Administrative Booking staff member will review all of the paperwork for release and, if everything is in order, send a message through CJIC to Main Jail authorizing the arrestee's release.

36. **Information Sent Back to Main Jail for Release**: The bail receipt, which includes the hearing notice, and Notice of Sex Offender Registration Requirement form (if required under Penal Code section 290) are faxed over to the Main Jail for release processing.

## RELEASE PROCESS

37. Once the person is cleared by Administrative Booking, Main Jail staff begins the release process.

38. The Release Deputy is responsible for processing all jail releases, including arrestees eligible for $0 bail. The Release Deputy is also responsible for covering the breaks of another deputy in another unit and is required to help out on in other areas of the jail in between releases. Like staff assigned to the booking area, the Release Deputy may need to respond to significant events in the jail and, thus, the deputy is not fixed to the release post station. The Release Office is located on the first floor of the Main Jail.

11

39. The Release Deputy is notified that an individual is eligible for release when the deputy receives a notification from Administrative Booking through CJIC. The Release Deputy checks periodically for updates. The Release Deputy will obtain the arrestee's property.

40. The Release Deputy will physically retrieve the arrestee from the booking area and the arrestee will undergo a DNA swab (if required under Penal Code section 296). The Release Deputy will then bring the arrestee to the release station. The Release Deputy double checks the arrestee for identifiers (including verifying identity using California DOJ electronic fingerprint matching) to ensure the arrestee is the correct person; and then the arrestee will verify and receive their property, sign the Notice of Sex Offender Registration Requirement form (if required under Penal Code section 290), and sign for the release of their property. The arrestee will also sign and receive a copy of the bail receipt, which includes the notice to appear at court.

41. The arrestee is now released.

42. The public lobbies at both Main Jail and Elmwood have telephones for individuals to make free local calls and a cell phone charging station.

**FACTORS THAT IMPACT PROCESSING**

43. **Factors that Impact the Progression of the Booking and Release Process**: There are many factors—too numerous to detail in this declaration—that can impact the progression of the booking process, including but not limited to:

   a. **Arrestee's Conduct**: The arrestee may be too uncooperative and/or combative to complete the booking process.

   b. **Arrestee's Intoxication**: The arrestee may be too intoxicated to engage in key portions of the booking process, like the medical evaluation.

   c. **Volume of Bookings**: There are times when the jail is usually slower. There are other times when multiple arrestees are brought in at same time and the arresting officer and arrestee must wait outside in the ramp area before entering the sally port.

   d. **Availability of Magistrate**: If an arresting officer requests that the magistrate set a higher bail pursuant Penal Code section 1269c, the magistrate may not be available between approximately 11:00 p.m. to 7:00 a.m. which may delay the processing for up to

12

8 hours.

e. **Staff Allocation**: If an arrestee is combative or requires special assistance (i.e., a search), intake staff are reallocated to assist with these tasks, which means that they are redirected from their usual work in the booking processing (e.g., taking fingerprints etc.). Also, there can be staffing shortages due to illness and other factors.

f. **Facility Support**: Booking area staff are first to respond to serious incidents in the jail. For example, if a fight breaks out on a housing unit or if there is a serious medical event in a housing unit, booking area staff will respond. Also, the jail may go into lockdown for significant events.

g. **Availability of Ambulances**: The arrestee may need to be picked up by an ambulance and transported to Emergency Psychiatric Services if a 72-hour hold is placed pursuant to Welfare and Institutions Code section 5150. Unfortunately, the Sheriff's Office has no control over the ambulance company and a transport call (non-emergency call) is the lowest on their list.

## SEARCHES

44. Depending on the circumstance, an arrestee may be searched at various times during the booking process.

45. **Sally Port Area**: An arrestee is searched by the arresting officer when they enter the sally port of the jail. Typically, this is a pat down search and shoe removal to check inside the shoes for contraband.

46. **Strip Search for Cause**: A strip search could be performed at the time the arresting officers completes medical screening—but that is only if the arresting officer has reason to believe the subject is concealing weapons or contraband. That information (cause for search) is relayed to our staff. Our staff notify the Lower Booking Sergeant and request approval for the strip search. Our staff will take the subject to a private cell area and conduct the strip search. Our staff will fill out a strip search log form, which indicates the purpose of the search, who requested it, the sergeant approving the search, and if anything was found during the search.

47. After the booking photograph is taken, staff conducts a pat search to ensure the

subject has no weapons or contraband.

48. At the time of housing and before an arrestee is taken to a housing unit at the Main Jail, the arrestee is taken to the "dress out room" and given jail clothing and a bag to put their personal clothes and shoes in. If the arrestee was arrested on a felony charge or a misdemeanor charge for violence, weapons, or drugs, the arrestee is strip searched. The search is conducted to ensure that weapons and contraband are not introduced into the general population.

49. If the arrestee is transported for housing to Elmwood or the Correction Center for Women, they are NOT strip searched or changed out into jail clothing prior to the transport. That task is completed at Elmwood Processing. The same steps for housing and strip searching at the Main Jail are followed at Elmwood for the same reasons.

**HOUSING**

50. The Sheriff's Office has an existing practice of attempting to transport all arrestees within five hours and house within eight hours. This practice avoids a backup in the booking area and ensures that arrestees have access to a bed and meals.

51. On June 8, 2020, Assistant Sheriff Davis directed staff that all arrestees who are eligible for $0 bail, including those where an officer has requested a higher bail under Penal Code section 1269c, will not be housed into the jail and can remain in the booking area for up to 12 hours. Booking Deputies have also been instructed to (1) check in periodically with Administrative Booking and the Office of Pretrial Services, regarding the status of the release process and magistrate review, respectively; and (2) contact the Lower Booking Sergeant after an arrestee eligible for $0 bail has been in custody for 6 to 8 hours. Once notified, the Lower Booking Sergeant will contact the Administrative Booking Supervisor and the Office of Pretrial Services regarding the status of the arrestee. If the arrestee is still pending release under $0 bail, the Lower Booking Sergeant will keep the arrestee in Lower Booking and will not transport or house the arrestee, even after 12 hours have elapsed. The Lower Booking Sergeant will also seek to expedite the release of the arrestee.

52. Below is a chart of all the arrestees booked and released on $0 bail on Wednesday June 17, 2020. The longer booking to released times occur during the early morning hours, which

14
Declaration of Laurie Smith ISO Opposition to Petitioner Reyes's
Verified Petition for Writ of Mandate
20CV366846

1  cover a period of time when Administrative Booking staff are not available.

| Booking Date | Release Date | Time Booked | Time Release | Total Elapsed Time |
|---|---|---|---|---|
| 06162020 | 06172020 | 2330 | 0904 | 9 hours, 34 min |
| 06172020 | 06172020 | 0040 | 0925 | 8 hours, 25 min |
| 06172020 | 06172020 | 0105 | 1013 | 9 hours, 8 min |
| 06172020 | 06172020 | 0155 | 0911 | 7 hours, 16 min |
| 06172020 | 06172020 | 1120 | 1614 | 4 hours, 54 min |
| 06172020 | 06172020 | 1135 | 1503 | 3 hours, 28 min |
| 06172020 | 06172020 | 1350 | 1943 | 5 hours, 53 min |
| 06172020 | 06172020 | 1442 | 1740 | 2 hours, 58 min |

**PARTICULAR ARRESTEES**

53. **Margarito Reyes**: Petitioner Margarito Reyes was booked on June 4, 2020 at 1000 hours and released at 1946 hours. The booking and release process took 9 hours and 46 minutes. This particular arrestee also had a $0 bail warrant, which was not found by the arresting agency or through the CJIC check completed in Lower Booking. Instead, the warrant was found by staff in Administrative Booking while processing the release when a warrant check for AKAs was completed. Because this warrant had insufficient information, staff had to contact Gilroy Police Department to confirm the warrant and other information. This is one example of how every booking is unique and the important role Administrative Booking plays in ensuring that the Sheriff's Office does not release individuals until all outstanding matters have been addressed. Mr. Reyes was transferred to Elmwood for release because of ongoing protests outside the jail.

54. **Christopher Jeffries**: Mr. Jeffries was booked on May 31, 2010 at 1045 hours and was released to the hospital on June 1, 2020 at 0710 hours. Because the arresting officer placed a hold under Welfare and Institutions Code section 5150, Mr. Jeffries had to be transported to Emergency Psychiatric Services at the time of release. Adult Custody Health Services contacted ambulance dispatch on May 31, 2020 at 2150 hours for transport. Ambulance dispatch advised that they were extremely short staffed and would not be able to provide a transport until the morning.

The ambulance arrived for transport at the Main Jail on June 1, 2020 at 0655 hours.  Mr. Jeffries had been cleared for release by our staff on May 31, 2020 at 1702 hours; however, because of ambulance delays, he was not released to Emergency Psychiatric Services until June 1, 2020 at 0710 hours.

55.  **German Matchniff**:  Mr. Matchniff was booked on May 30, 2020, at 0115 hours.  The arresting officer requested that the magistrate increase Mr. Matchniff's bail pursuant to Penal Code section 1269c in the affidavit of probable cause.  The magistrate set bail at $0 bail at 0602 hours.  Administrative Booking received the magistrate order at 0905 hours, and he was released from custody at Elmwood at 1520 hours.

56.  **Raymond Vasquez**:  The Booking Deputy set Mr. Vasquez's bail at $0 bail under the emergency bail schedule on both the Affidavit of Probable Cause and the Prebooking Information Sheet.

57.  **Salvador Carranza**:  The Affidavit of Probable Cause for Mr. Carranza states that he was arrested by Morgan Hill Police Department on May 20, 2020 at 0157 hours.  He was released from custody on May 20, 2020, at 1541 hours.

58.  **Rosa Murgia**:  The Booking Deputy set Ms. Murgia's bail at $0 bail under the emergency bail schedule on both the Affidavit of Probable Cause and the Prebooking Information Sheet at the time of booking at 0845 hours on May 27, 2020.  A magistrate ordered release on own recognizance.  She was release from custody on May 27, 2020 at 1332 hours.

59.  **April Cravin**:  The magistrate set bail for Ms. Cravin at $10,000 on May 27, 2020 at 2106 hours.

60.  **Sylvia Sainz**:  The magistrate ordered Ms. Sainz released on supervised own recognizance and set bail at $25,000 as a condition of that release on May 28, 2020.

61.  **David Munoz Rosas**:  The magistrate ordered Mr. Rosas released on supervised on recognizance on May 28, 2020 at 1338 hours.  Administrative Booking received his SORP paperwork at 1615 hours.  Mr. Rosas was released at 1754 hours.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 25, 2020, at San Jose, California.

LAURIE SMITH

16
Declaration of Laurie Smith ISO Opposition to Petitioner Reyes's
Verified Petition for Writ of Mandate
20CV366846

been cleared for release by our staff on May 31, 2020 at 1702 hours; however, because of ambulance delays, he was not released to Emergency Psychiatric Services until June 1, 2020 at 0710 hours.

55. **German Matchniff**: Mr. Matchniff was booked on May 30, 2020, at 0115 hours. The arresting officer requested that the magistrate increase Mr. Matchniff's bail pursuant to Penal Code section 1269c in the affidavit of probable cause. The magistrate set bail at $0 bail at 0602 hours. Administrative Booking received the magistrate order at 0905 hours, and he was released from custody at Elmwood at 1520 hours.

56. **Raymond Vasquez**: The Booking Deputy set Mr. Vasquez's bail at $0 bail under the emergency bail schedule on both the Affidavit of Probable Cause and the Prebooking Information Sheet.

57. **Salvador Carranza**: The Affidavit of Probable Cause for Mr. Carranza states that he was arrested by Morgan Hill Police Department on May 20, 2020 at 0157 hours. He was released from custody on May 20, 2020, at 1541 hours.

58. **Rosa Murgia**: The Booking Deputy set Ms. Murgia's bail at $0 bail under the emergency bail schedule on both the Affidavit of Probable Cause and the Prebooking Information Sheet at the time of booking at 0845 hours on May 27, 2020. A magistrate ordered release on own recognizance. She was release from custody on May 27, 2020 at 1332 hours.

59. **April Cravin**: The magistrate set bail for Ms. Cravin at $10,000 on May 27, 2020 at 2106 hours.

60. **Sylvia Sainz**: The magistrate ordered Ms. Sainz released on supervised own recognizance and set bail at $25,000 as a condition of that release on May 28, 2020.

61. **David Munoz Rosas**: The magistrate ordered Mr. Rosas released on supervised on recognizance on May 28, 2020 at 1338 hours. Administrative Booking received his SORP paperwork at 1615 hours. Mr. Rosas was released at 1754 hours.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 25, 2020, at San Jose, California.

_____
LAURIE SMITH

2232473

16