Akeeb Dami Animashaun
14 Wall Street, Suite 1603
New York, NY 10005
929.266.3971
animashaun@pm.me

Lucy Brierly Bansal
Janet Herold
JUSTICE CATALYST LAW
40 Rector Street, Floor 9
New York, NY 10006
202.525.7516
lbansal@justicecatalyst.org
jherold@justicecatalyst.org

Rachel Lederman, SBN 130192
ALEXIS C. BEACH & RACHEL LEDERMAN ATTORNEYS
P.O. Box 40339
San Francisco, CA 94140
415.282.9300
rachel@sfbla.com

*Counsel for Plaintiff Dylan Camarlinghi*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San José Division)

| | |
|---|---|
| DYLAN CAMARLINGHI, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SANTA CLARA COUNTY, et al.,<br><br>Defendants. | Case No. 21-cv-03020-EJD (LB)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM** |

**NOTICE OF MOTION AND MOTION FOR**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

PLEASE TAKE NOTICE that on **August 29, 2022 at 9:00 AM**, in the U.S. District Court for the Northern District of California, 280 South 1st St., San Jose, CA, 95113, Plaintiff Dylan Camarlinghi, individually and on behalf of all similarly situated persons, will and hereby does move this Court pursuant to Fed. R. Civ. P. 23(e) for an order that:

1. Grants preliminary approval of the proposed $2,375,000.00 non-reversionary settlement of *Camarlinghi v. Santa Clara County*, Case No. 21-cv-03020-EJD (LB), as described in the Class Settlement Agreement and General Release ("Settlement Agreement"), attached as Exhibit 1, as fair, reasonable, and adequate[1];

2. Conditionally certifies the Settlement Class, as defined in the Settlement Agreement, for the purpose of this Settlement;

3. Appoints Akeeb Dami Animashaun, Lucy Brierly Bansal and Janet Herold of Justice Catalyst Law, and Rachel Lederman of Alexis C. Beach & Rachel Lederman Attorneys, as Class Counsel;

4. Appoints American Legal Claim Services, LLC as the Settlement Administrator;

5. Directs notice to be disseminated to Class Members in the form and manner proposed by the Parties as set forth in the Settlement Agreement;

6. Sets deadlines for Class Notice to be sent, opt-out and objection deadlines, and a hearing date and schedule for final approval of the Settlement and consideration of Class Counsel's fee application and Named Plaintiff's service award, as set forth in the following agreed-upon schedule:

| Event | Date |
|---|---|
| Notice of Class Action Settlement Mailed to Settlement Class Members | 30 days after Preliminary Approval Order |
| Response Deadline for Opt-Outs and Objections | 60 days after Class Notice Mailed to Settlement Class Members |
| Motion for Final Approval and for Attorneys' Fees and Expenses and Class Representative Service Incentive Award Filed | 90 days after Preliminary Approval Order |
| Hearing on Motion for Final Approval and Attorneys' Fees and Expenses and Named Plaintiff's Award | To be determined by the Court |

---

[1] A proposed preliminary approval order is attached as Exhibit 2.

The proposed settlement should be preliminarily approved, and notice of the proposed settlement should be distributed to Class Members, because the settlement is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). Further, the proposed Notice of Class Action Settlement complies with due process requirements and is the "best notice that is practicable under the circumstances," as it provides Class Members an opportunity to fully assess the settlement before deciding whether to opt out or submit objections. *See* Fed. R. Civ. P. 23(c)(2)(B).

This Motion is based upon this Notice, the Supporting Memorandum, the Settlement Agreement, all papers and pleadings on file in this action, and such oral argument as may be considered by this Court at the time of the hearing.

DATED this 12th day of August 2022.

Respectfully submitted,

/s/

A. Dami Animashaun
Rachel Lederman
Lucy B. Bansal
Janet Herold

*Counsel for Plaintiff Dylan Camarlinghi*

**MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.   INTRODUCTION

Named Plaintiff Dylan Camarlinghi seeks preliminary approval of a proposed global class action settlement of *Camarlinghi v. Santa Clara County*, Case No. 21-cv-03020-EJD (LB). Plaintiff filed this class action lawsuit against Defendant County of Santa Clara (the "County") on April 26, 2021, alleging that the County violated the Fourteenth Amendment to the United States Constitution by failing to release him, and similarly situated individuals, within a reasonable period of time after the County of Santa Clara Office of the District Attorney (the "DA") declined to prosecute them and no other holds or warrants justified their continued detention. Almost immediately upon filing, the Parties realized that an early settlement would be in their best interest and spent the next nine months conducting informal discovery and negotiating a settlement. The Parties reached a global settlement on January 25, 2022, after extensive arms-length negotiations and three formal settlement conferences with Magistrate Judge Laurel Beeler.

The $2,375,000.00 aggregate settlement, which is entirely non-reversionary, is a fair and just result that will provide significant individual recoveries for the 244 Class Members. The Settlement Agreement is fair, reasonable, and adequate; the Class Representative and Class Counsel are adequate to represent the Class; the proposed notice complies with due process; and all requirements for preliminary approval have been satisfied. This Court should preliminarily approve the Settlement and order the proposed notice to be sent to Class Members.

## II.   BACKGROUND

### A.   Summary of the Proposed Settlement

The settlement terms, which are detailed more fully in the Settlement Agreement, are straightforward: in exchange for the establishment of a $2,375,000.00 non-reversionary settlement fund, Named Plaintiff and Class Members agree to forever release, acquit, relinquish, and discharge any claims they may have relating to or arising out of the factual or legal allegations in the Complaint.

In order to effectuate the Settlement Agreement, and for that purpose only, the Parties stipulate to the certification of the Settlement Class, which includes two subclasses, defined as follows[2]:

- The first stipulated settlement subclass (Settlement Subclass I): all persons (i) detained at the Jail from 12 to up to 24 hours after the Santa Clara DA declined prosecution; and (ii) for whom no holds, warrants, or other reasons justified their continued detention at the time the DA declined prosecution; and (iii) where such circumstances occurred between April 26, 2018, and April 26, 2021.

- The second stipulated settlement subclass (Settlement Subclass II): all persons (i) detained at the Jail for 24 hours or longer after the Santa Clara DA declined prosecution; and (ii) for whom no holds, warrants, or other reasons justified their continued detention at the time the DA declined prosecution; and (iii) where such circumstances occurred between April 26, 2018, and April 26, 2021.

The allocation of the $2,375,000.00 non-reversionary settlement fund is as follows:

- $1,980,000.00 will be allocated to Class Members. Members of Settlement Subclass I will receive no less than $250.00 per hour for each hour of compensable detention between 12 and 24 hours. Members of Settlement Subclass II will receive no less than $295.00 per hour for each hour of compensable detention after 24 hours.

- The remainder of the settlement fund—$395,000.00—will be allocated to pay attorneys' fees, costs, and expenses; class administration costs; and a service award to the Named Plaintiff. A maximum of $50,000 will be allocated to cover settlement administration costs. Class Counsel will petition the Court for approval of a

---

[2]The agreed-upon settlement class definitions are almost identical to definitions proposed in the Complaint. *See* ECF 1 ¶ 56. The only difference is that the Complaint proposed a class of people who were not released "on the day the DA declined prosecution" and the Parties agreed on a class of people who were not released within 12 hours from the time the DA declined prosecution as a reasonable compromise to facilitate an efficient and fair settlement.

service award for Named Plaintiff in the amount of $20,000.00. The remainder of the $395,000.00 will be allocated to Class Counsel as reimbursement for any and all attorneys' fees, costs, and expenses.

## B. Settlement Administration and Notice

The Settlement Class is comprised of 244 members, all of whom are known to the Parties. A detailed declaration describing how Class Members were identified is attached as Exhibit 3. In short, the County maintains electronic records of each person detained at the Jail. The records include: contact information, date of admission to and release from the Jail, and reason for release from the Jail. These records were used to identify Class Members, as defined above. The County will provide the most up-to-date contact information it has for each Class Member—including first and last name, date of birth, address, and telephone number—to the Settlement Administrator, consistent with the terms of the Settlement Agreement, to facilitate notice.

Class Counsel and the proposed Settlement Administrator, American Legal Claims Services, LLC (ALCS)[3], will employ a two-phased notice process. During the first phase, ALCS will use the National Change of Address System and an industry-accepted skip-tracing software to find updated mailing addresses for each Class Member and will send the Notice of Class Action Settlement, and accompanying Claim Form, identical to the one attached as Exhibit 4, to each Class Member via First Class U.S. Mail. Any mailed notices that are returned to ALCS as undelivered and bearing a forwarding address, will be remailed to the forwarding address by ALCS. Any mailed notices that are

---

[3]Plaintiff selected ALCS as the Settlement Administrator after a competitive bidding process. Plaintiff requested settlement administration bids from five class action administration companies on June 6, 2022. All five companies provided bids. Plaintiff chose ALCS because ALCS agreed to cap its fee with a "not-to-exceed" figure that was below any other bid for the same work. Class Counsel's firms have not worked with ALCS in the past. Class Counsel interviewed an ALCS representative about the proposed work at length on July 5, 2022, and are confident that ALCS understands the scope and requirements of the work, has adequate experience with similar matters, and is capable of carrying out this Settlement according to the terms of the Agreement. ALCS has administered over 800 settlements with over 50 million claimants and $3 billion dollars in distribution. ALCS has been approved as the settlement administrator in several cases in this District, including *Der-Hacopian v Darktrace*, 18-cv-06726-HSG and *Hutto v Albertsons*, 3:20-cv-07541-MMC.

returned to ALCS as "undeliverable as addressed," will be remailed to any other possible or likely address the skip-tracing software found for the relevant Class Member. ALCS will mail a reminder postcard notice to all non-responsive Class Members during the claims filing period. The anticipated cost of the first phase is $17,000.00. During the second phase, Class Counsel will engage either an investigator/paralegal and/or further retain ALCS to perform a deep search for each non-responsive Class Member. The deep search process will include sending additional letters, calling, texting, and in-person outreach to locate Class Members. Class Counsel anticipates that the second phase will cost up to $30,000.00. [4]

### III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

#### A. Legal Standard for Preliminarily Approving a Class Action Settlement

Where, as here, the parties resolve class action litigation through a class-wide settlement, they must obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (discussing "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). Settlement agreements conserve judicial time and limit expensive litigation. 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:41, at 87 (4th Ed. 2002) (hereinafter, "*Newberg on Class Actions*") ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Thus, a proposed settlement will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation. *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

---

[4] Because the County identified and has contact information for all Class Members and Class Counsel will conduct a deep search for all Class Members who do not respond to the initial notice, the Parties anticipate that the proposed notice process will facilitate a high claims rate.

Review of a proposed class action settlement generally occurs in two steps. First, "[t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." Manual for Complex Litigation (Fourth) § 21.632 (2004) (hereafter "Manual"). Second, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* § 21.632. A settlement is fair, reasonable, and adequate if it (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1079. The proposed Settlement readily satisfies these standards.

### B. The Proposed Class Satisfies Rule 23

The Parties have stipulated that a class exists for purposes of effectuating this settlement. The Class, as defined above, consists of all persons who were detained at the Jail for more than 12 hours after the DA declined prosecution and for whom no holds, warrants, or other reasons justified their continued detention. The Class is almost identical to classes that have been certified in similar cases, challenging a municipal policy of overdetaining people after the reason for their detention ends. *See, e.g.*, *Thompson v. Jackson*, No. 1:16-CV-04217, 2018 WL 5993867, at *3 (N.D. Ga. Nov. 15, 2018) (certifying class of "[a]ll persons . . . who were detained for more than 24 hours past the time at which employees of the Fulton County Jail knew or should have known that the inmate was to be released, and whose overdetentions were caused by the jail policy not to release inmates without running GCIC checks. . . ."); *Barnes v. D.C.*, 242 F.R.D. 113, 124 (D.D.C. 2007) (certifying class of people who were "not released, or, in the future, will not be released by midnight on the date on which the person is entitled to be released by court order or the date on which the basis for his or her detention has otherwise expired"). Accordingly, the Class easily satisfies the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

### 1. The stipulated class satisfies the Rule 23(a) requirements

A plaintiff seeking class certification must meet four requirements under Rule 23(a):

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). The stipulated class meets these requirements, which are known respectively as numerosity, commonality, typicality, and adequacy.

**Numerosity**. The numerosity requirement is satisfied when a class is so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). No specific numerical threshold is required; each case must be specifically examined. *General Tel. C. v. E.E.O.C.,* 446 U.S. 318, 330 (1980). Generally, however, 40 or more members will presumptively satisfy the numerosity requirement. *Aguayo v. Oldenkamp Trucking*, No. CV F 04-6279 ASI LJO, 2005 WL 2436477, at *12 (E.D. Cal. Oct. 3, 2005) (certifying class of 34 people and noting that "[a] class of 40 is presumptively numerous"). Here, the Class consists of 244 people, far exceeding the presumptive minima of 40 people. Because joinder of 244 people is impracticable, the numerosity requirement is easily satisfied.

**Commonality.** The commonality requirement is satisfied when class members' claims raise common contentions that are capable of class-wide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This requirement is met when class members' injuries arise from the application of a uniform policy. *See Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (holding that commonality requirement was satisfied where plaintiff alleged that a "company-wide policy" caused injury because even if policy is deemed to not be injurious, it would be a "fatal *similarity*" for which class-wide resolution is appropriate (emphasis in original) (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013))); *see also*, *In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 547 (N.D. Cal. 2012), *aff'd*, 789 F. App'x 9 (9th Cir. 2019) ("[H]ere there is in fact a common issue susceptible to common proof: a uniform policy.").

Here, as in *Alcantar* and *Autozone*, the commonality requirement is satisfied because the Complaint alleges that Class Members were overdetained pursuant to the County's uniform practice: "The County's policy, practice, and/or custom of waiting to release individuals who have no pending criminal charges until their prescheduled first appearance date is inadequate and unreasonable." ECF 1 ¶ 6; *see also, id.* ¶¶ 12-40. "Because the same practice and policy allegedly injured Plaintiffs, the causation elements of their § 1983 claims are common to all Plaintiffs." *Thompson*, 2018 WL 5993867, at *8; *see also Healey*, 2021 WL 149859, at *17 (holding that "courts have been willing to certify over-detention classes where the class can answer questions about whether a municipality's policy (or lack of one) for releasing inmates caused over-detentions"). The County's denial of the existence of the policy does not defeat commonality: "[C]hallenging *the existence* . . . of the policies, goes to the merits of a claim, and is inappropriate for resolution at the class certification stage." *See Driver*, 859 F.3d at 493 (emphasis added). The commonality requirement is therefore satisfied.

**Typicality.** The typicality requirement is satisfied when a class representative's claims "are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Importantly, the claims "need not be substantially identical." *Id.* The typicality standard is "permissive." *Id.*

Named Plaintiff's claims are typical of the Class. His claims arise from the same course of conduct as other Class Members, and he alleges that he suffered the same injury. As noted, all Class Members, including Named Plaintiff, allege that their injuries arose from the County's policy and practice of waiting to release individuals who have no pending criminal charges until their prescheduled first appearance date. *Compare* ECF 1 ¶¶ 12-40 (detailing County's policy of not releasing people until their prescheduled first appearance date even when no charges are pending); *with id.* ¶¶ 41-55 (alleging that Named Plaintiff Camarlinghi's release was not processed until his prescheduled first arraignment date despite having no pending criminal charges). And Named Plaintiff Camarlinghi and Class Members allege the same injury: they were detained for 12 or more hours after they were entitled to be released from custody. *See id.* ¶¶ 55. The fact that Named Plaintiff and Class Members were detained for different lengths of time does not destroy typicality. *Thompson*, 2018 WL

5993867, at *8 ("This contrast is merely a difference in the extent of the constitutional violation—or perhaps one way in measuring the alleged constitutional violation. Despite the varying lengths of time each Plaintiff was overdetained, they and the other class members are pursuing the same legal theory based on the same conduct.") Typicality is therefore satisfied.

**Adequacy.** "The final hurdle interposed by Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them. *See Hansberry v. Lee,* 311 U.S. 32, 42–43 (1940). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

First, no known or potential conflict exists between Named Plaintiff, undersigned counsel, and Class Members. As noted, Named Plaintiff suffered the same harm as Class Members and has a shared interest in vindicating their constitutional rights. Similarly, no known or potential conflicts of interest exist between undersigned counsel and Class Members. Second, undersigned counsel are highly qualified to prosecute this action. Undersigned counsel have significant experience litigating complex civil rights matters in federal court and have knowledge of both the details of the policies and practices challenged in this case as well as the relevant constitutional law. *See* Exhibit 5. The fact that undersigned counsel has secured a favorable settlement for the Class further demonstrates their adequacy. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619–620, (1997) (settlement terms can inform adequacy of representation).

### 2. The stipulated class satisfies the Rule 23(b)(3) requirements

Under Rule 23(b)(3), which governs damages class actions, a class should be certified when "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy both requirements, known respectively as predominance and superiority.

**Predominance.** The predominance requirement is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis. *Hanlon*, 150 F.3d at 1022.

Here, common issues regarding both liability and damages predominate over individual ones. As noted, Named Plaintiff alleges that he and Class Members were injured by a common practice—the County's policy and practice of waiting to release individuals who have no pending criminal charges until their prescheduled first appearance date. This showing satisfies the predominance requirement: "common questions predominate over individualized questions [w]here [] Plaintiff[] identif[ies] a specific policy enacted by Defendants that caused their overdetentions . . . ." *Thompson*, 2018 WL 5993867, at *11; *see also Healey*, 2021 WL 149859, at *25 (holding that predominance is satisfied where plaintiff alleges that "Defendants' inadequate process for timely releasing inmates caused respective subclass members to be over-detained.") Common issues therefore predominate over individual ones.

**Superiority.** Rule 23(b)(3) requires that the proposed "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court must consider the following factors to determine whether a class action is the superior method for adjudicating the controversy:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*

These factors support certification. First, Class Members have no interest in individually controlling the prosecution of their claims. Indeed, absent certification, individual claims might be abandoned, given the relatively small individual damages at stake for some potential class

members. *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."). Second, Named Plaintiff and undersigned counsel are unaware of any litigation concerning the specific facts or claims at issue in this action. Third, the resolution of this case in one judicial proceeding, especially now that a settlement agreement has been reached, is far preferable, for all parties involved, than having multiple proceedings in this or other courts. *Cf. Groseclose v. Dutton*, 829 F.2d 581, 584 (6th Cir. 1987) (noting that the alternative to a consolidated class action would result in an "inefficient situation, fraught with potential for inconsistency, confusion, and unnecessary expense" (citation and quotation omitted)).

Finally, the class action is manageable and ascertainable[5]. The Parties have not only pointed to objective criteria by which to identify Class Members, but have in fact identified all 244 Class Members from records in the County's possession. This class action is therefore eminently manageable. Requiring individual lawsuits would likely result in far greater manageability problems and unnecessarily burden the judiciary, such as duplicative discovery (including numerous depositions of the same County officials and repetitive production of documents), repeated adjudication of similar controversies in this Court (with the resultant risk of inconsistent judgments), and excessive costs, which would prove uneconomic for potential plaintiffs since litigation costs would dwarf potential recovery. *See Hanlon*, 150 F.3d at 1023. "A fair examination of alternatives can only result in the apodictic conclusion that a class action is the clearly preferred procedure in this case." *Id.*

---

[5] With respect to a Damages Class under Rule 23(b)(3), courts have held that "ascertainability," or that the class be sufficiently defined, is in essence a fifth Rule 23 prerequisite. *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014). This requirement is satisfied when class members can be identified without much, if any, individual factual inquiry. *Id.* This requirement is easily satisfied here: All class members have been identified.

### C. The Settlement is Fair, Reasonable, and Adequate

At the preliminary approval stage, this Court must determine whether the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). The proposed settlement meets these requirements.

#### 1. The settlement is non-collusive

The settlement is entirely non-collusive. The Parties settled the case after nearly a year of extensive settlement negotiations and three formal settlement conferences with Magistrate Judge Laurel Beeler, who has extensive settlement experience. The settlement therefore merits an initial presumption of fairness. *See, e.g.*, *Satchell v. Fed. Exp. Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *see also Newberg on Class Actions* § 11:41, at 90 (courts adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval"). This factor therefore weighs heavily in favor of preliminary approval of the Settlement Agreement.

#### 2. The settlement does not grant improper or preferential treatment to any segment of the class

The settlement does not grant improper preferential treatment to the Named Plaintiff or to any segment of the Class.[6] The settlement does, however, recognize the efforts of Named Plaintiff, Dylan Camarlinghi, but it does not grant improper preferential treatment. The Settlement provides a service award of $20,000 to be distributed to Mr. Camarlinghi. Courts routinely approve service awards to "compensate class representatives for the work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Quiruz v. Specialty Commodities, Inc.*, No. 17-CV-03300-BLF,

---

[6] The settlement, however, provides different recoveries for the Subclasses based on the strength of their claims and harms that result from longer periods of detention.

2020 WL 6562334, at *11 (N.D. Cal. Nov. 9, 2020) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).

Here, a service award of $20,000, which represents less than one percent of the settlement fund ($2,375,000.00) is warranted. *See, e.g.*, *In re On-Line DVD Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving service awards comprising in the aggregate less than 1% of the gross settlement value). First, Courts have approved service awards of $20,000, as requested here, even where the common fund was substantially lower, meaning that the service award constituted a higher percentage of the common fund. *See, e.g.*, *Ross v. U.S. Bank Nat'l Ass'n,* Civ. No. 3:07–2951 SI, 2010 WL 3833922, at *3 (N.D.Cal. Sept. 29, 2010) (approving an award of $20,000 to each of four named plaintiffs where settlement fund was $1,050,000.00, based on their contributions to litigation and the risk that being a class representative would harm their reputation). Second, and more importantly, this case could not have happened without Mr. Camarlinghi's contribution, as he is the sole class representative in this litigation. Despite his initial reluctance to participate in this litigation as the sole named plaintiff because of the inherent risks and publicity associated with being a named plaintiff, Mr. Camarlinghi eventually decided to serve as the sole class representative because he knew that the rights of hundreds of people could not be vindicated without his participation. Class Members owe their substantial recovery to his willingness to be the sole class representative prosecuting this action. A service award of $20,000 is therefore warranted and does not grant preferential treatment to Named Plaintiff.

### 3. The settlement falls within the range of possible approval

To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080). Class Members' individual recoveries compare favorably with recoveries in similar cases. The settlement therefore falls within the range of possible approval.

First, "[l]itigation is inherently risky and full of impediments, even where . . . the plaintiffs ha[ve] a strong chance of proving liability." *Hays v. Eaton Group Attorneys, LLC*, 2019 WL 427331, at *10 (M.D. La. Feb. 4, 2019). As in *Hays*, Class Counsel here "are experienced, realistic, and understand that the resolution of liability, issues, the outcome of the trial, and the likely appeals process, are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties." *Id*.

Second, under the Settlement Agreement, Class Members will receive at least $250.00 per hour of detention beyond 12 hours and $295.00 dollars per hour of detention beyond 24 hours. This raises two questions: (1) whether it is reasonable for damages to begin accruing after 12 hours of detention and (2) whether the hourly compensation is reasonable. Both are reasonable.

The Ninth Circuit has recognized that an arrested person has the right to release within a reasonable time after the reason for their detention ends. *Brass v. Cty. of Los Angeles*, 328 F.3d 1192, 1200 (9th Cir. 2003). The Ninth Circuit has, however, refused to adopt a bright line rule as to what constitutes a reasonable delay in releasing an arrested person after the reason for their detention ends (here, the DA's prosecution declination). *See Berry v. Baca*, 379 F.3d 764, 771 (9th Cir. 2004) (Courts have not settled on any concrete number of permissible hours of delay in the context of post-release detentions). Although the court has repeatedly reiterated that the inquiry is fact-intensive, it has noted that the "the outer bounds for releasing the prisoner should be less than 48 hours." *Brass v. Cty. of Los Angeles*, 328 F.3d 1192, 1202 (9th Cir. 2003). No presumption (either of reasonableness or unreasonableness) attaches to releases that occur within 48 hours of a person being entitled to release. It is therefore a reasonable compromise of settlement to begin to calculate damages after 12 hours of detention. *See Williams v. County of Los Angeles*, C.D. Cal. No. 2:97-cv-03826-CW, ECF 96 at 3 (C.D. Cal 2002) (approving class action overdetention settlement where class was defined as people not released from the county jail on the same day they were entitled to release). Indeed, courts have certified overdetention classes where damages did not begin to accrue until 24 hours after detention. *See, e.g.*, *Thompson*, 2018 WL 5993867, at *3 (certifying class of "[a]ll persons . . . who were detained for more than 24 hours past the time at which employees of the Fulton County Jail knew or should

have known that the inmate was to be released, and whose overdetentions were caused by the jail policy not to release inmates without running GCIC checks. . . .").

Moreover, $250.00 to $295.00 an hour for each hour of overdetention is reasonable. This Court need not look further than *Limone v. United States*, 497 F. Supp. 2d 143 (D. Mass 2007), which has been endorsed by courts in this District, to determine that Class Members' compensation is reasonable. *See, e.g.*, *J.N. v. Hendrickson*, 2017 WL 2539390, at *7 (C.D. Cal. June 12, 2017); *Smith v. City of Oakland*, 538 F. Supp. 2d 1217, 1242 (N.D. Cal. 2008), *aff'd*, 379 F. App'x 647 (9th Cir. 2010). *Limone* held that "a wrongfully imprisoned plaintiff is entitled to compensation of at least $1 million per year of imprisonment" (or $2,740.00 per day, which adjusted for inflation is $3,607.00 per day). *Id.* And courts have subsequently noted that these figures represent the floor, not the ceiling. *Hendrickson*, 2017 WL 2539390, at *7, Here, Class Members compensation is well above *Limone*'s threshold. Class Members will receive a minimum of $6,540 for the first day of overdetention, and more for subsequent days of overdetention.[7] This figure is reasonable.

### 4. The settlement has no obvious deficiencies

The Settlement raises none of the red flags identified by the Ninth Circuit in *In re Bluetooth Headsets Prods. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). First, the settlement sum is entirely non-reversionary. Any amounts not approved for Class Counsel's requested attorneys' fees and expenses or for class representative service awards will be added to the net settlement fund.[8] *Cf. id.*

---

[7] Class Members will receive at least $250 per hour for the first 12 hours of overdetention, which equals $3,000 for the first 12 hours of compensable overdetention. They will receive at least $295 per hour for each additional hour of compensable overdetention, which means that they will receive $3,540 for the next 12 hours of overdetention. The total compensation for the first 24 hours of overdetention will be at least $6,540.

[8] The Parties agreed that unclaimed or residual funds will be distributed pursuant to the *cy pres* doctrine. But because of the protracted nature of settlement agreement negotiations, the Parties have elected to take a "wait-and-see approach" concerning issues relating to *cy pres* distribution. See *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir.2009) (finding *cy pres* distribution "becomes ripe only if entire settlement fund is not distributed to class members" and declining to determine propriety of *cy pres* at that time because "the fund in this case may well be depleted before *cy pres* kicks in"). With Judge Beeler's assistance, the Parties agreed to meet and confer at least 90 days before the end of the Claims period to discuss and mutually agree on issues relating to the redistribution of unclaimed and residual funds and to select *cy pres* recipients, if necessary. The Parties will submit a motion to this Court seeking approval of any agreement reached at the meet and confer.

(Instructing courts to scrutinize settlements where "the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund"). Second, the proposed attorneys' fees are modest. *Cf. id.* (instructing courts to scrutinize settlements where "counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"). Although the County has agreed not to oppose counsel's fee application, the agreed-upon fee amount, a maximum of $395,000.00 (less Named Plaintiff's service award payment and settlement administration costs) is less than 17 percent of the settlement fund ($2,375,000.00). This is substantially lower than the average fee award in class action settlements. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). The settlement therefore has no obvious deficiencies.

## IV.   THE PROPOSED NOTICE TO CLASS MEMBERS IS APPROPRIATE

Before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. *Id.* "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard," *Churchill*, 361 F.3d at 575, and if mailed to each class member "who can be identified through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

Here, the proposed Notice describes the nature and status of the litigation; sets forth the relevant class definition; states the class claims and issues; states that a Class Member may enter an appearance through an attorney if the Class Member so desires; discloses the right of Class Members

to seek exclusion from the Settlement Class or to object to the proposed settlement, as well as the deadlines for doing so; and warns of the binding effect of the settlement approval proceedings on people who remain in the Settlement Class. In addition, the Notice will be translated into Spanish and Vietnamese, describes the terms of the proposed Settlement, and provides contact information for Class Counsel, as well as identifying the fee that they propose to request from the Court. The Class Notice also discloses the time and place of the Final Approval Hearing and the procedures for commenting on the Settlement and/or appearing at the hearing.

The Notice will be distributed to Class Members in a manner that provides "the best notice practicable under the circumstances." The County will supply Class Members' last known addresses for the notice mailing. And the Settlement administrator will use the national change of address database and an industry-accepted skip-tracing software to find updated addresses for Class Members where notices are returned as undelivered. The contents of the notice and its method of distribution therefore satisfy all applicable requirements.

## V. CONCLUSION

After an extensive negotiation process, the Parties have reached a comprehensive agreement that is fair, reasonable, and adequate, and warrants this Court's preliminary approval. As such, the Parties respectfully request that this Court grant preliminary approval of the Settlement, approve the form and proposed manner of distribution of the class notices, and schedule a hearing for final approval consistent with the time frame set forth in the Agreement.

DATED this 12th day of August 2022.             Respectfully submitted,

                                                /s/
                                                A. Dami Animashaun
                                                Rachel Lederman
                                                Lucy B. Bansal
                                                Janet Herold

                                                *Counsel for Plaintiff Dylan Camarlinghi*