# Ex. 3

JAMES R. WILLIAMS, County Counsel (S.B. #271253)
KIM H. HARA, Deputy County Counsel (S.B. #258763)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San José, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240
kim.hara@cco.sccgov.org

Attorneys for Defendant
COUNTY OF SANTA CLARA (erroneously sued herein as Santa Clara County)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San José Division)

| | |
|---|---|
| DYLAN CAMARLINGHI, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SANTA CLARA COUNTY; DOES 1-25,<br><br>Defendants. | No. 21CV03020 EJD<br><br>**DECLARATION OF TARA LUNDSTROM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: August 29, 2022<br>Time: 9:00 a.m.<br>Ctrm: 4 – 5th Floor<br>Judge: The Honorable Edward J. Davila |

# DECLARATION OF TARA LUNDSTROM

I, Tara Lundstrom, declare:

1. I am an attorney admitted to practice in the courts of this State, and I serve as a Deputy County Counsel in the Office of the County Counsel for the County of Santa Clara, attorneys of record herein for Defendant County of Santa Clara. I make this declaration in support of the Motion for Preliminary Approval of the Settlement in this action. Unless stated otherwise, I know the facts herein stated of my own personal knowledge, and if called upon to do so, I could and would competently testify to them under oath.

2. I joined the County as a Deputy County Counsel in January 2018. In my role, I have advised the County's law enforcement and criminal justice departments—including its Office of the Sheriff (SO), Department of Correction (DOC), Office of the District Attorney (DAO), Probation Department, and Office of Pretrial Services—on a variety of issues, including issues related to criminal justice data sharing, data privacy, and technology. Prior to joining the County, I was employed as an attorney at the Judicial Council of California, where I advised the Judicial Council and California superior courts on issues related to access to court records, criminal justice, and technology.

## Background on the County Jail's Booking and Release Process

3. The Criminal Justice Information Control (CJIC) system is a criminal justice mainframe system developed and maintained by the County. CJIC has been used for decades by law enforcement and criminal justice agencies in Santa Clara County, including both County departments and external agencies. These agencies use CJIC daily for numerous business and operational purposes.

4. When a law enforcement officer arrests an individual in Santa Clara County, that officer may transport the arrestee to the County's Main Jail to be booked into custody. The officer completes a Pre-Booking Information Sheet and provides this form to the SO's Custody Division. The Pre-Booking Information Sheet includes, among other things, the arrestee's name, date of birth, address, phone number, and the criminal charges associated with that booking. The arrestee's

identifying information is verified by the Custody Division through a fingerprint search of state and federal criminal justice databases. At the time of booking, a deputy sheriff from the Custody Division manually enters this information, as well as the arrest and booking date and time, into CJIC. The deputy sheriff also creates a paper file—known as the "booking jacket"—with information related to the arrest and booking, including the Pre-Booking Information Sheet, a copy of any holds or warrants obtained from the arresting officer, if applicable, and general information about the arrestee and arrest. The booking jacket is picked up by the DOC's Administrative Booking Unit ("Admin Booking"), which then reviews all charges, holds, and warrants. When Admin Booking processes the booking in CJIC, CJIC automatically calculates the last day that the arrestee may be held in custody for arraignment pursuant to California Penal Code section 825 based on the arrest date and time. CJIC is preprogrammed with all weekends, holidays, and court hours to automatically generate the last date by which the arraignment must be held and to store this date until it has passed (at which point it is automatically deleted from CJIC). Admin Booking then handwrites that last date on the front of the booking jacket.

5. After transporting the arrestee to the County's Main Jail, the law enforcement officer asks the DAO to file criminal charges against the arrestee. If the arrestee is in custody, the DAO has a short time period, set by statute, in which to decide whether to file criminal charges. If the arrestee is in custody on the morning of the last day that they can be brought to arraignment under California Penal Code section 825, the Custody Division will transport the arrestee to criminal court so that they are available to appear at their arraignment in the event the DAO decides to file criminal charges with the court that day. Upon returning to jail from court, the Custody Division may make a handwritten notation in the paper logbook associated with the arrestee's housing unit of the date and time when the arrestee returned from court.

6. If the DAO decides not to file any of the criminal charges associated with the booking, it uses a transaction in CJIC to record that decision. In the process, the DAO manually enters the disposition date for the charges into CJIC, and CJIC automatically records the date and time that the system was updated with that disposition. CJIC also automatically causes a notification to be printed on a printer located in the Admin Booking office. Admin Booking then places the

printed CJIC notification in the booking jacket.

7. The release process includes a full review of the booking jacket to ensure that all matters are resolved and running a new check for other cases, holds, and warrants that would prevent the arrestee's release as indicated in either CJIC and/or the California Law Enforcement Telecommunications System (CLETS). Admin Booking makes a notation on the front of the booking jacket if any holds or warrants are found. Admin Booking also prints out a copy of the CJIC transaction displaying the disposition of all charges associated with the booking to confirm that there are no outstanding charges. A copy of the CJIC transaction is placed in the booking jacket. Admin Booking also reviews the booking jacket for any notifications from Custody Health Services ("Custody Health"), the County department that provides medical and mental health services to all inmates in the County jail facilities. At any time while an arrestee is in custody, Custody Health can fax a notification to Admin Booking requesting that Custody Health be consulted prior to their release. Custody Health may send a notification if, for example, there is a medical hold under Welfare and Institutions Code sections 5150 or 5250.[1]

8. If the arrestee is eligible for release, Admin Booking notifies the Custody Division to release the arrestee. If there is a notification from Custody Health in the arrestee's booking jacket, Admin Booking will also notify the Custody Division to consult with Custody Health. Upon receiving the release notice, the Custody Division completes the release process by consulting with Custody Health, if applicable; locating the arrestee and allowing them to get their belongings in order; escorting the arrestee to the release processing center; transporting the arrestee to the release desk; accounting for and returning the arrestee's money and property from storage; allowing the arrestee to change into their regular clothes; verifying the arrestee's fingerprints; providing the arrestee any notifications or other release documents; and releasing the arrestee. When an arrestee is

---

[1] In California, law enforcement officers and mental health professionals can place a patient on an emergency 72-hour hold, or 5150, if they are determined to pose a danger to themselves or others, or they are gravely disabled. A 5250 hold is an extension of a 5150 and allows a hold up to 14 days.

released from jail, the deputy sheriff assigned to the release desk manually records the release date and time and release type into CJIC. The deputy sheriff may also make a notation on a custody form if the arrestee was released to an ambulance. The custody form is then forwarded to Admin Booking and placed in the booking jacket. Once Admin Booking confirms the release has been completed, the booking jacket is archived.

**Class Action Lawsuit and Data Verification Process**

9. This class action lawsuit was filed on April 26, 2021 by Plaintiff Dylan Camarlinghi, on behalf of himself and others similarly situated, alleging that they were detained in the County jail for an unreasonable amount of time after the DAO declined to file criminal charges against them.

10. In an effort to determine the number of arrestees who could potentially be a member of this class action lawsuit, I contacted the County's Technology Services and Solutions (TSS) department and worked with a senior application developer to initiate a CJIC data search and retrieval. I requested the data that included an arrestee's personal identifying file number, booking number,[2] booking date and time, DAO disposition date and time, release date and time, and release type. My request was purposely overinclusive and included all bookings at the County jail from April 26, 2018 through April 26, 2021, where all charges associated with the booking were rejected *at some point* by the DAO, even if months or years after their release from custody.[3]

11. Once TSS provided the initial data generated from CJIC, my colleague Kim Hara and I began a thorough, comprehensive, and time-intensive, indeed, months-long, review process that involved working with staff from various County departments, including TSS, SO, and DOC/Admin Booking, to verify the data. That verification process included manually reviewing all the data

---

[2] The booking number, or CEN, is created for each individual booking and includes all charges associated with that booking.

[3] For example, the arrestee may be cited and released from custody immediately after booking. The DAO may initially file charges against that arrestee, but later decide not to continue pursuing those charges because of subsequent developments in the case.

pulled by TSS with Ms. Hara to confirm that there were no inconsistencies when comparing the release types with booking, disposition, and release dates and times. If we had any questions about a particular arrestee's booking, we asked Admin Booking to pull the arrestee's booking jacket, review the file, and confirm additional data. We also asked Admin Booking to pull a sizeable sampling of booking jackets to review and check for any inconsistencies with the data. In total, Admin Booking pulled several hundred booking jackets as part of this review process.

12. Once it was determined that the data was consistent, we removed all arrestees who were released *before* the DAO made a decision on their cases (e.g., releases on the Own Recognizance Program (ORP); the Supervised Own Recognizance Program (SORP); SORP and bail (SOBA); cite and release; and bail). We also removed all arrestees who were released within 12 hours of the DAO declining to prosecute all charges on that booking.

13. For the remainder of the bookings, we continued working with staff from the SO and DOC to retrieve additional data that was not available in CJIC. This additional data included the last day for each arrestee's arraignment; the confirmed date and time of the disposition of all charges at the time that Admin Booking processed the release from custody (the CJIC transaction printout); any information about holds, warrants, or other reasons that would prevent a release; and the time arrestees returned from court on the last day of arraignment, if applicable and available. For example, while CJIC automatically generated the last day that an arrestee may be held in custody for arraignment pursuant to California Penal Code section 825, that data was not available to be retrieved from the CJIC system because CJIC automatically deletes the last date for arraignment once it has passed. Instead, that date—which was copied and handwritten by Admin Booking staff on each arrestee's booking jacket—was retrieved from the front of each booking jacket. Likewise, while CJIC automatically generated a notification of the DAO's decision not to pursue charges on a booking, and sent the notification to the Admin Booking printer, that notification was not available to retrieve in the CJIC system. Instead, to the extent the printed notification was available to review, we retrieved it from the booking jacket, along with a printout of the CJIC transaction displaying the disposition of all charges associated with the booking at the time of the arrestee's release.

14. Once we gathered and reviewed the additional data, we began comparing that data

with the booking, disposition, and release dates and times, to determine whether there were any inconsistencies. We also reviewed the release types, holds, warrants, and other reasons that prevented release for each booking to determine whether any arrestees were lawfully detained after the DAO declined to prosecute the charges against them (e.g., probation and parole holds; federal and out-of-county warrants; fugitive holds; 5150 and 5250 holds requiring ambulance transfers to Emergency Psychiatric Services; court hearing in another matter; and new charges filed by the DAO). In addition to reviewing the booking jackets, this process also included asking Custody Health to review the medical files for those arrestees who were not released due to medical holds.

15. Finally, we asked the SO and DOC to review files to determine the release time for those arrestees who were taken to court on the last day for their arraignment. These individuals were taken to court in the morning and could not be released from custody until they returned to the County jail. Thus, we calculated their release times based on the actual time they returned from court, if that information were available. For some arrestees, the Custody Division made a handwritten notation in the paper logbook associated with the arrestee's housing unit to show the arrestee's actual time returning from court to their housing unit. This data was not available for every arrestee, however. For those arrestees who did not have an actual return time, we calculated the average return time among the arrestees with documented return times to be 3:29 p.m.

16. Once we reviewed and verified all of the data, we determined that between April 26, 2018 through April 26, 2021, there were 244 arrestees who were detained for 12 or more hours after the DAO declined all charges on their booking. This total included 8 arrestees who were released between 12 to 24 hours after the DAO declined all charges, and 236 who were released more than 24 hours after the DAO declined all charges.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 12, 2022 at San José, California.

[signature]

TARA LUNDSTROM