# Ex. 5

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San José Division)

DYLAN CAMARLINGHI, on behalf of himself and others similarly situated,

Plaintiff,

v.

SANTA CLARA COUNTY, et al.,

Defendants.

Case No. 21-cv-03020-EJD (LB)

**DECLARATION OF A. DAMI ANIMASHAUN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

I, A. Dami Animashaun, declare as follows:

1. I am admitted to practice before the courts of the State of California and the State of New York, as well as several federal courts. I am admitted to practice in this Court *pro hac vice*. I am one of several attorneys representing the Plaintiff in this action. I make this statement based on personal knowledge, and if called as a witness could and would testify competently thereto.

2. I am a 2016 graduate of Harvard Law School. I have worked as an attorney at Civil Rights Corps and the American Civil Liberties Union. At both organizations, I litigated civil rights class action lawsuits challenging unconstitutional policies and practices in municipal criminal legal systems, including unconstitutional pretrial detention policies and practices, which are at issue in this case.

3. I served as lead counsel in the following related civil rights class action lawsuits: *Russell v. Wayne County*, 2:20-cv-11094 (E.D. Mich. 2020) and companion case, *Wayne County Jail Inmates v. Lucas*, No. 71-173217-CZ (challenging conditions of confinement at the Wayne County Jail during Covid-19 pandemic); *Briggs v. Montgomery*, 2:18-cv-02684 (D. Ariz. 2018) (challenging Maricopa County's "pay-to-play" pretrial diversion program); *Parga v. Board of County Commissioners of the County of Tulsa*, 4:18-cv-0298 (N.D. Okla. 2019) (challenging Tula County's use of pre-set money bail schedules to detain people arrested for misdemeanors and felonies); *Daves v. Dallas County*, 3:18-cv-00154 (N.D. Tex. 2018) (same).

4. Class Members in this case would likely never have received compensation for the alleged overdetention if Plaintiff's Counsel had not invested substantial resources at the investigation stage of this case—with no promise of any recovery down the road—to gather evidence of the County's practices, identify Class Members, and locate an adequate Class Representative. Class Members did not know they had been harmed; thus, they would have been unlikely to contact an attorney to pursue individual cases despite the gravity and strength of their Constitutional claims.

5. Before filing this case, I, along with co-counsel, spent months investigating and uncovering the unconstitutional policies and practices challenged in this case. This investigation presented special difficulties because information about the challenged policies was not publicly available, and Class Members were not aware that they had been injured because even though the County claims to have changed and no longer engage in the alleged practices, the County did not notify Class Members that they should not have been detained or that the DA had declined to prosecute them long before they were released from jail.[1]

---

[1] Plaintiff alleges that he and Class Members were unconstitutionally overdetained because the County did not release them from the Jail within a reasonable time after the Santa Clara County District Attorney ("DA") declined to prosecute them. But Class Members were not told the date and time of the DA's prosecution decision when they were released from the Jail and this information is not publicly available. Class Members were therefore not aware of their injuries before Plaintiff's Counsel began investigating this case.

6. Plaintiff's Counsel and investigators spent eight months identifying, searching for, and locating harmed Class Members who had changed their phone numbers and addresses numerous times since their release from jail; conducting dozens of interviews with Class Members, family members, former attorneys, and community stakeholders; requesting and reviewing records, in an attempt to understand the challenged polices, which are pled in detail in the Complaint; informing Class Members who did not know they had been harmed about their rights; and retaining a Class Representative. This process presented considerable difficulty, and, on several occasions, Plaintiff's Counsel thought that they would not be able to access the information necessary to file this case and seek justice for the Class.

7. Before filing the case, Plaintiff's Counsel also performed substantial legal research on the possible constitutional, statutory, and common law claims that could be raised, as well as defenses to those claims. We also conducted an extensive review of class action cases in this Circuit and other jurisdictions presenting similar issues.

8. On April 26, 2021, Plaintiff's Counsel filed the Complaint in this case. Almost immediately after, the parties realized that an early settlement would be in their best interest and spent the next nine months conducting informal discovery and negotiating a settlement. The settlement process included requesting and reviewing data concerning the arrest, detention, and release of Class Members; researching and drafting settlement letters exchanged with the County and submitted to Magistrate Judge Beeler; and attending three settlement conferences with Magistrate Judge Beeler, in addition to several other informal settlement conferences with the County.

9. This case settled on January 25, 2022. In the subsequent seven months, Plaintiff's Counsel spent countless hours drafting and negotiating the Settlement Agreement with the County. That process included more than a half-dozen telephonic conferences, several of which lasted multiple hours; researching disputed issues; and drafting and reviewing several versions of the Settlement Agreement. Additionally, Plaintiff's Counsel researched and

drafted the Preliminary Approval Motion and the accompanying documents, and solicited and engaged a settlement administrator.

10. As of January 25, 2022, the day this cased settled, Plaintiff's Counsel had devoted 240 hours to this case, for a lodestar of $177,219.70[2]. Plaintiff's Counsel submitted the following loadstar calculations to the County and Magistrate Judge Beeler before the January 25 settlement conference:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| A. Dami Animashaun | 137 | $ 675.00 | **$ 92,475.00** |
| Rachel Lederman | 33 | $ 950.00 | **$ 31,350.00** |
| Anam Haque | 31 | $ 350.00 | **$ 10,850.00** |
| Lucy Brierly Bansal | 33 | $ 530.00 | **$ 17,490.00** |
| Janet Herold | 5 | $ 1,200.00 | **$ 6,000.00** |
| Craig Briskin | 6.3 | $ 899.00 | **$ 5,663.70** |
| Brian Shearer | 4.6 | $ 695.00 | **$ 3,197.00** |
| Benjamin Elga | 1.8 | $ 740.00 | **$ 1,332.00** |
| Rose Farley (in-house legal investigator) | 35.5 | $ 210.00 | **$ 7,455.00** |
| Jessenia Class (paralegal) | 6.7 | $ 210.00 | **$ 1,407.00** |
| **Total** | | | **$ 177,219.70** |

11. The rates charged by our attorneys and legal staff are reasonable and within the range of appropriate market rates charged by attorneys with comparable experience levels for litigation of a similar nature.

12. As described above, since this case settled, Plaintiff's Counsel have devoted substantial time to negotiating the terms of the Settlement Agreement with the County and

[2] Because of the risks, uncertainty, and significant investigative time and resources invested in this case with no guarantee of compensation or recovery, *see* ¶¶ 5-6, Plaintiff's Counsel believe that a 2.0 multiplier of the loadstar is warranted. *See Blum v. Stevenson*, 465 U.S. 866, 900 (1984) ("risk of nonpayment required an upward adjustment to provide reasonable fees"). But because Plaintiff's Counsel have incurred substantial additional hours negotiating the terms of the Settlement Agreement and will continue to incur hours throughout the settlement approval and claims administration processes, *see* ¶¶ 9, 12, our attorneys' fees request will likely be equal to our loadstar without a multiplier. Notwithstanding, as discussed in the Preliminary Approval Motion (at 15), the proposed attorneys' fees are less than 17 percent of the settlement fund, which is substantially lower than the average attorneys' fees award in class action settlements in this Circuit. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003).

expect to incur substantial additional hours during the settlement approval and claims administration processes. Class Counsel will provide detailed declaration about the hours devoted to this case and lodestar calculation along with the final approval motion.

13. The settlement is an extraordinary result that will provide substantial individual recoveries for Class Members. Class Members will receive a minimum of $6,540 for each day of compensable detention, which compares favorably with recoveries in similar cases.

I declare under penalty of perjury that the foregoing is true and correct. Executed this August 11, 2022, at Los Angeles, CA.

/s/ *A. Dami Animashaun*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San José Division)

| | |
|---|---|
| DYLAN CAMARLINGHI, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SANTA CLARA COUNTY, et al.,<br><br>Defendants. | Case No. 21-cv-03020-EJD (LB)<br><br>**DECLARATION OF LUCY B. BANSAL** |

I, Lucy B. Bansal, declare as follows:

1. I am Counsel at Justice Catalyst Law, Inc. ("JCL"). JCL is a civil and human rights organization with nonprofit tax status. I submit this Declaration in support of the Plaintiff's motion for preliminary approval of the proposed settlement in this matter.

2. I am admitted to practice in Maryland and the District of Columbia and am admitted to practice in this court *pro hac vice*. JCL is one of several law firms representing the Plaintiff in this action, and my colleague Janet Herold and I are among the attorneys representing the Plaintiff.

**Background and Experience**

3. I have represented plaintiffs in individual, class, and collective actions since 2014, with a focus on vindicating plaintiffs' civil and employment law rights. Before joining JCL, was an Associate in the Class and Collective Action Litigation Group at Outten & Golden LLP, where I litigated, mediated, and settled employment class and collective actions nationwide. Before that, I

represented workers in individual and collective action matters in Maryland and Washington, D.C. as an Associate at a small law firm in Silver Spring, Maryland. I received my juris doctor *cum laude* from the University of Maryland in 2014 and graduated from McGill University in Montreal, Quebec in 2011.

4. My colleague Janet Herold, who is JCL's Legal Director, also represents the Plaintiff. She joined JCL in April 2021 after serving as the Regional Solicitor for the U.S. Department of Labor for the preceding nine years.

5. Ms. Herold has been practicing law for more than 25 years. She graduated *magna cum laude* from Harvard Law School in 1995 and *summa cum laude* from the University of Notre Dame in 1991. She has devoted her entire practice to representing low-wage and vulnerable workers and people in complex litigation.

6. Ms. Herold was in private practice from 1995 until joining the Department of Labor in 2012, and provided representation almost exclusively to plaintiff classes seeking relief under applicable federal and state wage and hour laws or anti-discrimination laws.

7. While in private practice, she served as class counsel repeatedly in complex class action litigation, including for plaintiffs in the following litigation: *Carillo et al. v. Scheider, Inc. et al.*, No. 11 Civ. 08557 (C.D. Cal. 2011) (class action litigation brought on behalf of a statewide class of Walmart warehouse workers); *Vasquez v. California*, No. GIC740832 (Super. Ct., San Diego) (a statewide class action of incarcerated workers and taxpayers); *Bishop v. Lee's Industries* (a statewide class action brought on behalf of Pennsylvania homecare workers); *Bayada Nurses, Inc. v. Commonwealth of Pennsylvania*, No. 67 MAP 2008 (Supreme Court Penn. 2010) (represented amici in relation to Pennsylvania Supreme Court review of the status of homecare worker under Pennsylvania's minimum wage, overtime and wage payment collections law); *Thomas et al. v. Total Home Health Care Corporation* (statewide class of Pennsylvania home care workers); *Gale v. Catholic Healthcare Partners*, No. 06-1776 (N.D. Ohio 2006) (statewide class of Ohio hospital workers); *Flores et al. v. Albertsons et. al.*, No. 01 Civ. 515 (C.D. Cal. 2001) (statewide class of supermarket janitors); *Vega et al. v. Contract Cleaning Maintenance et al.*, No. 03 Civ. 9130 (N.D. Ill. 2003) (multi-state class of janitors); *Haro et al. v. Providence St. Joseph's* (federal collective

action brought on behalf of homecare registered nurses); *Flores et al v. Guess Jeans et al.* (federal statewide class of garment workers); *Bouman v. Baca* (statewide class of minority and female sheriff's department staff).

8. Ms. Herold was awarded the California Attorney of the Year Award for her work on behalf of a class of Walmart warehouse workers and she has been recognized by the City of Los Angeles for her work on behalf of workers across Southern California, including her representation of supermarket janitors across California. She has served as an advisor to the transition teams for President Barack Obama and then California Attorney General Kamala Harris and she served on the legal team of the President's Commission of Labor-Management Relations established by President Clinton (the "Dunlop" Commission).

9. From June 2012 until she joined JCL, Ms. Herold served as Regional Solicitor for the Western Region of the U.S. Department of Labor. As Regional Solicitor, she was responsible for overseeing the work of more than 40 attorneys working from three regional offices, located in Seattle, San Francisco, and Los Angeles, to provide representation of the Secretary of Labor in civil trial litigation and U.S. District Courts and before administrative law judges for all matters arising in the eleven Western states and territories, stretching from Colorado to Guam. She was responsible for enforcing more than 180 labor and whistleblower statutes, in addition to providing legal services to Department officials, including assisting the United States Attorney in litigation involving the Department. In this role, she supervised and led hundreds of high-profile complex enforcement cases, most notably in the wage and hour, ERISA, and anti-discrimination areas. Her work was widely and routinely recognized by the Secretary of Labor, including the issuance of hundreds of Honors Awards from the Secretary of Labor recognizing the work of enforcement teams she led. She also served as the national point-person for Wage and Hour regional enforcement for the last eight years of her time as Regional Solicitor.

10. Ms. Herold is admitted to practice before the courts of the State of California, Commonwealth of Massachusetts, and this federal court, as well as several other federal district courts and United States Courts of Appeals.

11. My former JCL colleague, Craig Briskin, also performed work on this matter during his time as Senior Counsel at JCL.

12. Mr. Briskin received a Juris Doctor degree from Harvard Law School in 1998. He has represented plaintiffs in class actions since 2001, including recently serving as counsel for plaintiffs in *Fraser v. TeamHealth Holdings, Inc.,* Case No. 4;20-CV-4600 (JSW) (N.D. Cal.), a proposed RICO class action alleging overcharges for surprise medical bills, *Bodor v. Maximus*, Case No. 5:19-CV-5787 (EGS) (E.D. Pa.), an action alleging student loan servicing abuses by a contractor for the United States Department of Education, *Fusion Elite All Stars v. Varsity Brands, LLC*., Case No. 4:20-CV-3521 (JSW) (N.D. Cal.), a case concerning alleged monopolization of markets for competitive cheerleading, and *Orage v. Amway Corp.*, No. RG20049773 (Sup. Ct. Ca., Alameda County), a suit alleging that Amway misclassified its salespeople as independent contractors under California law. Mr. Briskin is currently a Trial Attorney in the U.S. Department of Justice, Antitrust Division, Transportation, Energy & Agriculture Section. Mr. Briskin is admitted to the bars of the Commonwealth of Massachusetts, New York and the District of Columbia, as well as the bars of the United States District Courts for the Southern and Eastern Districts of New York, the District of Columbia, the U.S. Court of Appeal for the Ninth Circuit and the United States Supreme Court.

13. Brian Shearer, JCL's former Litigation Director, and Benjamin Elga, JCL's Executive Director also performed work on this matter.

14. Mr. Shearer received his J.D. from American University Washington College of Law in 2013. He began working at the Consumer Financial Protection Bureau while still in law school, and he became Director Richard Cordray's Senior Advisor in 2017, leading the CFPB's policy efforts concerning the student loan industry, overseeing a number of examinations and working on enforcement actions concerning the Fair Credit Reporting Act and other consumer law. In 2018, he helped launch Justice Catalyst Law, where he worked as Litigation Director until January 2021. Mr. Shearer is currently Senior Advisor to the Director of the Consumer Financial Protection Bureau. Mr. Shearer is admitted to the bar of the Commonwealth of Virginia.

15. Mr. Elga is the Executive Director and founder of JCL. Mr. Elga received his J.D. from Harvard Law School in 2014. Prior to starting JCL, Mr. Elga was engaged in class action practice in

numerous consumer and antitrust class actions including *In re: Automotive Parts Antitrust Litigation*, No. 12-md-02311 (E.D. Mich.), *In re: Packaged Seafood Products Antitrust Litigation*, No. 15-md-2670 (S.D. Cal.), *Cason-Merenda v. Detroit Medical Center*, No. 06-15601 (E.D. Mich.), *Hadley v. Subaru of America, Inc.*, No. 15-7210 (D.N.J.) (sparking the recall of defective cars whose hoods flew open while driving), and *Noble v. Samsung Electronics America, Inc.*, No. 15-cv-03713 (D.N.J.).

**Class Counsel Fees and Costs**

16. A summary of JCL's work on this matter is included in the Declaration of Attorney Animashaun, also filed as an attachment to Plaintiff's motion for preliminary approval of the settlement. JCL will also provide a detailed declaration in connection with Plaintiff's motion for attorneys' fees and costs.

17. As of the parties' settlement conference on January 25, 2022, JCL has expended approximately 93 hours on this litigation, with an average hourly rate of $640 for a total of $42,544.70. Class Counsel's lodestar has grown throughout the extended period of post-settlement negotiation of the settlement agreement language and will continue to grow through preliminary and final approval, including responding to Class Member inquiries, overseeing the work of the Settlement Administrator, and other administrative and briefing tasks.

18. The rates charged by our attorneys and legal staff are reasonable and within the range of appropriate market rates charged by attorneys with comparable experience levels for litigation of a similar nature.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of August 11, 2022, at Storrs, Connecticut.

*/s/ Lucy B. Bansal*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San José Division)

| | |
|---|---|
| DYLAN CAMARLINGHI, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SANTA CLARA COUNTY, et al.,<br><br>Defendants. | Case No. 21-cv-03020-EJD (LB)<br><br>**DECLARATION OF RACHEL LEDERMAN** |

I, Rachel Lederman, declare as follows:

1. I am admitted to practice before the courts of the State of California and this federal court, as well as several other federal district courts, and the United States Courts of Appeals for the Eighth and Ninth Circuits. I am one of several attorneys representing the plaintiff in this action.

2. Since becoming an attorney in 1987, I have spent the majority of my time practicing in the areas of civil rights and housing rights litigation, and criminal appellate work. First and Fourth Amendment rights have been a particular focus of my legal career, and I have litigated a number of impact class actions and multiple plaintiff actions in this area. These have included the following:

3. With co-counsel Dennis Cunningham, I represented more than 20 plaintiffs in *Bringardner et al. v. Cairns et al.*, a state court civil rights action that arose from San

Francisco Police excessive force and detention of AIDS demonstrators and bystanders during the infamous 1989 “Castro sweep”. The case settled during trial for more than $200,000.

4. I represented the plaintiffs and plaintiff class in *Collins v. Jordan*, C93-0741 CW, a civil rights class action that arose from mass arrests and incarceration of more than 300 people in San Francisco on May 1, 1992. The unconstitutional mass arrests took place during a local state of emergency after a jury acquitted the Los Angeles Police officers whose brutal beating of motorist Rodney King was the first such incident to be captured on a bystander video and “go viral”. I had primary responsibility for the litigation of this successful class action, which resulted in a published First Amendment decision, *Collins v. Jordan*, 110 F.3d 1363 (9th Cir. 1996), a $1 million settlement, and equitable relief including sealing and destruction of the arrest records.

5. After the Oakland Police Department shot more than 50 people with “less lethal” munitions during a peaceful anti-war picket in 2003, I was one of several attorneys who represented the plaintiffs in another class action, *Local 10, ILWU, et al. v. City of Oakland*, No. C03-2962 TEH. We were able to resolve the class claims for equitable relief with a complete overhaul of Oakland Police crowd control policy, which I had a significant role in drafting and negotiating. We also obtained monetary relief for more than 50 individual plaintiffs.

6. I was the lead counsel in two subsequent cases brought after the Oakland Police violated policies adopted in the *Local 10* settlement. *Spalding v. City of Oakland*, C11-02867 TEH, was a class action brought on behalf of 150 people who were arrested and incarcerated by the Oakland Police while lawfully protesting the 2009 BART police killing of Oscar Grant. *Campbell v. City of Oakland*, C11-05498 JST, was a hybrid class action brought on behalf of “Occupy” demonstrators who the Oakland Police had shot with “less lethal” munitions or arrested. In 2013, we settled both cases with significant strengthening of the Oakland crowd control policy, sealing and destruction of the arrest records, and a total of $2.3 million.

7. I am currently lead counsel in three other putative class actions. *Dundon v. Kirchmeier*, 22-1246, arises from law enforcement indiscriminate excessive force against hundreds of peaceful "water protectors" protesting construction of the Dakota Access Pipeline in 2016. *NAACP, et al., v. City of San Jose,* C21-01705 PH, and *Brown v. City of Oakland,* C21- 02881 RS, arise from police indiscriminate excessive force during protests following the police killing of George Floyd in May, 2020.

I declare under penalty of perjury that the foregoing is true and correct. Executed this June 12, 2022, at San Francisco, CA.

/s/ *Rachel Lederman*